**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **TIMOTHY WILLIAMS,** | ) | |
| | ) | |
| **Defendant/Movant,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 2:07CV742-MEF-SRW** |
| | ) | **(CR-05-216-F)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**GOVERNMENT'S RESPONSE TO § 2255 MOTION**

COMES NOW the United States of America (the Government), the Respondent in this case, and, responds to Defendant/Movant Timothy Williams' Motion Under § 2255 to Vacate, Set Aside, Or Correct Sentence By a Person In Federal Custody, as follows:

I.  PROCEDURAL HISTORY AND RELEVANT FACTS

On September 8, 2005, a grand jury for the Northern District of Alabama returned a three-count indictment against Defendant/Movant Timothy Williams.  *See* Attachment A, a copy of the indictment in this case.  The indictment charged that, on or about June 13, 2005, in Montgomery, Alabama, in the Middle District of Alabama the defendant did knowingly and intentionally possess with intent to distribute marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1); that on or about June 13, 2005, in Montgomery, Alabama in the Middle District of Alabama, the defendant did knowingly use and carry, during and in relation to, and did knowingly possess in furtherance of, a drug trafficking crime as set forth in Count 1 above, which allegation the Grand Jury realleges and incorporates

by reference herein, for which the defendant may be prosecuted in a Court of the United States, a firearm, namely a Ruger, Model P89, 9mm pistol, serial # 311-98162; a Rossi, .38 caliber revolver, serial # W216081; a Strum Ruger,.223 caliber rifle, serial # 195-57105 and a Norinco, Model SKS, serial #01125 or 1701125. All in violation of Title 18, United States Code, Section 924(c)(1)(A); and, that on or about June 13, 2005, in Montgomery, Alabama in the Middle District of Alabama, the defendant, having been previously convicted in a court, of a crime punishable by imprisonment for a term in excess of one year, to-wit: Theft of Property, First Degree in the Circuit Court of Montgomery County (CC 98-282), did knowingly and willfully possess a firearm, in and affecting commerce, that is a Ruger, Model P89, 9mm pistol, serial # 311-98162; a Rossi, .38 caliber revolver, serial # W216081; a Strum Ruger,.223 caliber rifle, serial # 195-57105 and a Norinco, Model SKS, serial #01125 or 1701125, and ammunition, in violation of Title 18, United States Code, Section 922(g)(1). Williams initially entered a plea of not guilty at his arraignment on September 21, 2005.

Subsequently, Williams entered into a plea agreement with the Government. *See* Attachment B, a copy of the plea agreement in this case. In return for a plea of guilty to the charge in the indictment, the Government agreed to recommend a sentence at the low end of the applicable advisory U.S. Sentencing Guidelines range as determined by the Court, including credit for accepting responsibility, and at least a three- level downward departure. Additionally, the Government agreed to dismiss Count 3 of the Indictment. *Id*. At 1. Williams, for his part, agreed to plead guilty to Counts 1 and 2; to waive the right to appeal the conviction and sentence; and, to waive the right to attack the conviction and sentence in any post-conviction proceeding. The waiver excepted appeal on the grounds of ineffective assistance of counsel and prosecutorial

2

misconduct. *Id.* At 3d.

On May 31, 2006, Williams changed his plea to guilty.  *See* Attachment C, a copy of the

May 31, 2006, guilty plea hearing in this case.  After the Court ascertained the terms of the plea

agreement, insured that Williams understood those terms (*id.* at 1- 4), and that the plea agreement

contained all of the agreements between the parties (*id.* at 6), the Court outlined for Williams the

maximum penalties for his charged crimes (*id.* at 7-8).  Williams had previously  informed the

Court under oath that he was satisfied with his attorney's advice (*id.* at  6), and informed the

Court that information about the U.S. Sentencing Guidelines and their impact on his plea were

sufficiently discussed with his attorney (*id.* at 9).   Next, the Court outlined the rights that

Williams would be relinquishing by pleading guilty (*id.* at 9-11) and explained the charge in the

indictment to him (*id.* at 12).  The Court, with the aid of defense counsel, then elicited from the

defendant the following factual basis for the plea:

| | |
|---|---|
| Counsel: | Mr. Williams, on June 13th, 2005, were you in Montgomery County? |
| Williams: | Yes. |
| Counsel: | And on that date, did you possess a quantity of marijuana? |
| Williams: | Yes. |
| Counsel: | And did you - were you aware that you possessed that quantity of marijuana? |
| Williams: | Yes. |
| Counsel: | Did you also at the same time and in the same place on that day, June 13th, 2005, possess the four firearms that are named in the indictment? |
| Williams: | Yes. |
| Counsel: | And do you agree with me that information provided to us by the |

|            | government, to which we will stipulate, would establish that - excuse me. Your Honor I believe I've laid a factual basis... |
|------------|-------------------------------------------------|
| Counsel:   | One other question. Did you possess those firearms in furtherance of your intent to possess and distribute marijuana? |
| Williams:  | Yes. |
| The Court: | Is there any disagreement that this offense may be prosecuted in a court of the United States; that is, the possession of controlled substance? |
| Counsel:   | No, Your Honor. |

Williams then entered his plea of guilty to Counts 1 and 2 of the Indictment.

A presentence investigation report was ordered and prepared by the U.S. Probation Office in this case and a sentencing hearing was held on August 16, 2006.

Williams did not file a direct appeal of his conviction or sentence.

Williams filed his Motion to Vacate, And Or Correct Sentence on August 10, 2007. On August 21, 2007, this Court entered an order directing the Government to respond on or before September 20, 2007. The Government now files this response to the § 2255 motion.

## II.  CLAIMS RAISED IN THE § 2255 MOTION

As far as the Government can discern, Williams raises the following issues in his § 2255 motion:

1. Counsel provided ineffective assistance by failing to challenge federal territorial and subject matter jurisdiction as to: the District Court's authority; and, the Constitutional validity of Title 18 and Title 21 of the United States Code;

2. Counsel provided ineffective assistance of counsel by failing to file a direct appeal challenging federal territorial and subject matter jurisdiction.

4

### III.  RESPONSE TO CLAIMS FOR RELIEF

**A.**    **Williams Has Met The One-Year Statute Of Limitations Deadline For
The Filing of Claims Under 28 U.S.C. § 2255**.

As an initial matter, it should be noted that Williams has filed his § 2255 motion in a

timely manner under paragraph six of 28 U.S.C. § 2255, which provides a one-year period of

time within which to file a motion under the rule.  The applicable provision in this case requires

that a movant file his § 2255 motion within one year from "the date on which the judgment of

conviction became final."

Williams was sentenced on August 16, 2006, and did not file an appeal to the Eleventh

Circuit Court of Appeals.  The Judgment in a Criminal Case was signed by United States District

Court Judge Mark E. Fuller on August 23, 2006 and certified on August 24, 2006. Therefore, at

the latest, Williams had three hundred and sixty-five days from entry of judgment to file his §

2255 motion. He filed his motion August 10, 2007.  It is, therefore, timely.

**B.**    **This Court Should Dismiss All of Williams' Claims, Except For His Claims
Of Ineffective Assistance Of Counsel, Because All Of Those Claims Are
Procedurally Defaulted Because They Could Have Been Raised On Direct Appeal,
But Were Not**.

Williams is not entitled to relief on those claims that he did not raise at or prior to the

entry of his guilty plea or on appeal, but could have.

A motion under § 2255 cannot be used as a substitute for appeal, *Burke v. United States*,

152 F.3d 1329, 1331 (11th Cir. 1998), and claims not raised at trial or on direct appeal that could

have been are generally barred from review in § 2255 proceedings, *McCoy v. United States*, 266

F.3d 1245, 1258 (11th Cir. 2001), *cert. denied*, 122 S.Ct. 2362 (2002).  In *Mills v. United States*,

36 F.3d 1052 (11th Cir. 1994), the Eleventh Circuit succinctly summarized the law concerning

procedural default as follows:

> Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding....  A ground of error is usually "available" on direct appeal when its merits can be reviewed without further factual development....  When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error....  Alternatively, under the fundamental miscarriage of justice exception, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."...

*Id*. at 1055-56 (internal citations omitted).  *See also*, *McCoy v. United States, 266 F. 3d at 1258* ("A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish cause and prejudice for his failure to assert his claims on direct appeal.").  The burden of demonstrating cause and prejudice or a miscarriage of justice is on the movant.  *See, e.g., Bousley v. United States,* 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,'...or that he is 'actually innocent[.]'").

In this case Williams has clearly defaulted his claims that do not relate to ineffective assistance of counsel, and he has not alleged any cause and prejudice, or actual innocence, to overcome these procedural defaults.  Therefore, those claims for relief should be rejected.

**C.**     **Williams' Ineffective Assistance of Counsel Claims Should Be Rejected Because They Are Without Any Merit.**

Williams alleges his counsel was ineffective for essentially the same reasons: (1) that counsel failed to challenge the fact that the District Court did not have territorial and subject

matter jurisdiction; and, (2) that counsel was ineffective for failing to challenge his arrest, conviction and sentence, pursuant to violations of Title 18 and Title 21 of the United States Code, as said statues are not applicable to him as a resident of the State of Alabama.  As is demonstrated below, Williams was not denied the effective assistance of counsel as he claims.

To succeed on a claim of ineffective assistance of counsel, a defendant must prove both that his counsel's performance was deficient and that that deficient performance prejudiced his case. *Strickland v. Washington,* 466 U.S. 668 (1984); *see also*, *Bell v. Cone,* 122 S. Ct. 1843 (2002) (Supreme Court reaffirming the *Strickland v. Washington* standard for reviewing ineffective assistance of counsel claims); *Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (Eleventh Circuit applying two-part test of *Strickland v. Washington*), *cert. denied,*122 S. Ct. 1185 (2002).  More specifically, Williams must show that (1) identified acts or omissions of counsel fell below an objective standard of reasonableness, and (2) that his counsel's alleged errors or omissions resulted in prejudice to him to such an extent that, without counsel's alleged errors or omissions, there is a reasonable probability that the outcome of his trial would have been different.  *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990).

In analyzing counsel performance under the performance prong of *Strickland*, this Court must presume that the conduct of counsel was reasonable, *Yordan v. Dugger,* 909 F.2d at 477.  A "[d]efendant must prove deficient performance by a preponderance of competent evidence, and the standard is 'reasonableness under prevailing professional norms.'" *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1303-04 (11th Cir. 2000)(footnotes omitted).  The Eleventh Circuit has described a defendant's burden with regard to the deficient performance prong of an ineffective assistance of counsel claim as follows:

Because there is such a wide range of constitutionally acceptable performance, a petitioner seeking to rebut the presumption of adequate performance must bear a heavy burden:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. ... We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.
>
> ... Thus, in order to show that counsel's performance was unreasonable, the petitioner must establish that *no competent counsel would have take the action that his counsel did take....*

*Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (some internal citations omitted).

The Eleventh Circuit has described a defendant's burden in demonstrating that his counsel's deficient performance prejudiced his case as "high", noting that it is not enough to show that any errors had some conceivable effect on the outcome of the proceeding. *Robinson v. Moore*, 300 F.3d 1320, 1343-44 (11th Cir. 2002). To succeed on the ineffective assistance of counsel claim, the defendant must show that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. In the guilty plea context, to satisfy the prejudice requirement, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Pease*, 240 F.3d 938, 941 (11th Cir.)(*citing Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)), *cert. denied*, 122 S. Ct. 381 (2001).

Finally, "[i]t is well established that a habeas petitioner must demonstrate both deficient performance and prejudice, and that a failure to demonstrate either prong constitutes a failure to demonstrate ineffective assistance of counsel." *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir.

2000); *accord, Robinson v. Moore*, 300 F.3d at 1343.

As to each of his claims of ineffective assistance of counsel, Williams has failed to plead facts sufficient to demonstrate that he was prejudiced by any of counsel's actions. For that reason, his § 2255 motion should be summarily dismissed.

**1.     District Court's Jurisdictional Authority.**

The Constitution of the United States, Article III, vests the judicial power of the United States in the Supreme Court and in the District Courts of the United States, as ordained and established by the Congress of the United States. Constitution of The United States, Article III, Section. 1.

The judicial power of the District Courts extends to all cases, in law and equity, arising under the Constitution and the laws of the United States. Further, trial for all crimes shall be held in the State where the crime is committed. *Id*. At Section. 2.

Congress has the power to make all needed rules and regulations with respect to the territory or other property belonging to the United States. United States Constitution, Article IV, Section. 3. Alabama became the 22nd state of the United States on December 14, 1819.

Any judge of the United States or any United States Magistrate Judge, of any state where an offender may be found, to arrest and imprison the offender for trial for the commission of any offense against the United States. Title 18, United States Code, Section 3041.

Title 18, Section 924 was enacted as part of the Gun Control Act of 1968 by Congress and amended, in part by Congress pursuant to the Comprehensive Crime Control Act of 1984.

Title 21, Section 841(a) was enacted by Congress as part of the Uniform Controlled Substances Act and was specifically adopted by the State of Alabama and codified as Code of

Alabama 1975, Section 20-2-1 to 20-2-190.

Williams claims that the District Court lacked jurisdiction and that Title 18 and 21 of the United States Code somehow did not apply to him are without merit as shown above. Because the State of Alabama is a part of the territory of the United States of America, because Congress is empowered to create the laws of the United States and because the federal courts are empowered to address any persons within the United States for commission of any offense against the United States, the District Court properly had jurisdiction over Williams and the charges upon which he was arrested. This claim is groundless and should be dismissed as without merit.

### 2.    Counsel's Ineffectiveness.

Williams' claims of ineffective assistance of counsel are based solely upon his contention that the District Court lacked jurisdiction over him and that he is not subject to Titles 18 and 21 of the United States Code as discussed above. The Government's argument in IIIB1. Is hereby incorporated in whole, in response to the question of ineffectiveness of counsel.

Counsel for the defendant have submitted affidavits to the Court which set out their positions as to these claims that said claims are without merit because the arguments are erroneous statements of law and fact. *See* Affidavit of Jennifer Hart (Doc. 3); Affidavit of Kevin Butler (Doc. 5); and, Affidavit of Christine Freeman (Doc. 6). Because counsel is not required to file frivolous motions or make erroneous arguments, Williams has not met his burden of establishing ineffective assistance of counsel pursuant to *Strickland*, and this issue should be dismissed as being without any merit.

Finally, Williams argues that his attorney failed to file a direct appeal, presumably of the

same arguments he makes in the current motion. Counsel for Williams at sentencing was Tiffany McCord who has submitted an affidavit the Court in which she states that the defendant never requested that an appeal be filed on his behalf. Additionally, Ms. McCord notes that her own review of the facts and circumstances of the case revealed no issues which would merit the filing of an appeal in the case. See Affidavit of Tiffany McCord (Doc. 4). It should be noted that no where in his motion does Williams state that he requested that a direct appeal be filed on his behalf, though it is clear from McCord's affidavit that the issue was discussed. Id. At 6. Therefore, given the recent holding by the Eleventh Circuit Court of Appeals in Otero v. United States, (September 17, 2007)(holding that because no rational defendant in Otero's position would have sought an appeal in light of the broad appeal waiver to which he had agreed, and because he did not communicate a desire to appeal to his lawyer, the lawyer was not under a constitutional obligation to consult the client about an appeal and, therefore was not constitutionally deficient in his representation of Otero.) *See* Attachment "D", Williams has failed to meet his burden of establishing that Ms. McCord provided ineffective assistance of counsel pursuant to the *Strickland* standard.  This final issue should be dismissed as being without any merit.

### IV.  MISCELLANEOUS

All facts not specifically admitted by the Government in this response are denied.

Furthermore, all arguments made by the Government in this response are made in the alternative and should be considered separately and severally.

Also, should this Court determine that Williams has made any pro se arguments not addressed in this response, the Government would request the opportunity to further respond to

those arguments.

Finally, Williams has not pleaded facts or presented sufficient evidence or argument demonstrating he is entitled to an evidentiary hearing, and his claims for relief should be denied without an evidentiary hearing. *See, Blacklidge v. Allison*, 431 U.S. 63, 73-74 (1977); *Tejada v. Dugger*, 941 U.S. 1551, 1559 (11th Cir. 1991); *United States v. Laetividal-Gonzalez*, 939 F. 2d 1455, 1465 (11th Cir. 1991).

## V.  CONCLUSION

For the above reasons, Defendant/Movant Timothy Williams has failed to demonstrate that he is entitled to any relief from this Court, and his § 2255 motion should be denied without an evidentiary hearing.

Respectfully submitted this 20th day of September, 2007.

LEURA G. CANARY
UNITED STATES ATTORNEY


/s/ Susan R. Redmond
SUSAN R. REDMOND
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280     (334) 223-7138 fax
susan.redmond@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **TIMOTHY WILLIAMS** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 2:07cv742-MEF-SRW** |
| | ) | **(CR-05-216-F)** |
| | ) | |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I certify that I placed a copy of same in the United States Mail, postage pre-paid and properly addressed to Movant/ Defendant Timothy Williams, #11778-002, FCI-Oakdale, P.O. Box 5000, Oakdale, LA 71463-5000.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ Susan R. Redmond
SUSAN R. REDMOND
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7138 fax

13

**FILED**

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

SEP - 8 2005

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO. *2:05CR 216-F* |
| | ) | [21 USC 841(a)(1); |
| v. | ) | 18 USC 924(c)(1)(A); |
| | ) | 18 USC 922(g)(1)] |
| TIMOTHY WILLIAMS | ) | |
| | ) | |
| | ) | INDICTMENT |

The Grand Jury charges:

### COUNT 1

On or about June 13, 2005, in Montgomery, Alabama, in the Middle District of Alabama,

**TIMOTHY WILLIAMS,**

defendant herein, did knowingly and intentionally possess with intent to distribute marijuana, a

Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

### COUNT 2

On or about June 13, 2005, in Montgomery, Alabama in the Middle District of Alabama,

**TIMOTHY WILLIAMS,**

defendant herein, did knowingly use and carry, during and in relation to, and did knowingly possess

in furtherance of a drug trafficking crime as set forth in Count 1 above, which allegation the Grand

Jury realleges and incorporates by references herein, for which the defendant may be prosecuted in

a Court of the United States, a firearm, namely a Ruger, Model P89, 9mm pistol, serial # 311-98162;

a Rossi, .38 caliber revolver, serial # W216081; a Strum Ruger, .223 caliber rifle, serial # 195-57105

and a Norinco, Model SKS, serial #01125 or 1701125. All in violation of Title 18, United States

Code, Section 924(c)(1)(A).

<u>COUNT 3</u>

On or about June 13, 2005, in Montgomery, Alabama in the Middle District of Alabama,

TIMOTHY WILLIAMS,

defendant herein, having been previously convicted in a court, of a crime punishable by

imprisonment for a term in excess of one year, to-wit: Theft of Property, First Degree in the Circuit

Court of Montgomery County (CC 98-282), did knowingly and willfully possess a firearm, in and

affecting commerce, that is a Ruger, Model P89, 9mm pistol, serial # 311-98162; a Rossi, .38 caliber

revolver, serial # W216081; a Strum Ruger, .223 caliber rifle, serial # 195-57105 and a Norinco,

Model SKS, serial #01125 or 1701125, and ammunition, in violation of Title 18, United States Code,

Section 922(g)(1).

<u>FORFEITURE ALLEGATION</u>

A.    Count 3 of this indictment is hereby repeated and incorporated herein by reference.

B.    Upon conviction for the violation of Title 18, United States Code, Section 922(g)(1),

as alleged in Count 3 of this indictment, the defendant,

TIMOTHY WILLIAMS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924 and Title 28,

United States Code, Section 2461(c), all firearms and ammunition involved in the commission of

this offense, including but not limited to the following:

> a Ruger, Model P89, 9mm pistol, serial # 311-98162; a Rossi, .38
> caliber revolver, serial # W216081; a Strum Ruger, .223 caliber rifle,
> serial # 195-57105 and a Norinco, Model SKS, serial #01125 or
> 1701125, and ammunition.

C.    Upon conviction for the violation of Title 21, United States Code, Section 841(a)(1)

and Title 18, United States Code, Section 924(c)(1)(A), as alleged in Counts 1 and 2 of this

indictment, the defendant,

TIMOTHY WILLIAMS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924 and Title 28,

United States Code, Section 2461(c), all firearms and ammunition involved in the commission of

this offense, including but not limited to the following:

> a Ruger, Model P89, 9mm pistol, serial # 311-98162; a Rossi, .38
> caliber revolver, serial # W216081; a Strum Ruger, .223 caliber rifle,
> serial # 195-57105 and a Norinco, Model SKS, serial #01125 or
> 1701125, and ammunition.

D.    If any of the property described in this forfeiture allegation, as a result of any act an

omission of the defendant:

(1)    cannot be located upon the exercise of due diligence;

(2)    has been transferred, sold to, or deposited with a third person;

(3)    has been placed beyond the jurisdiction of the court;

(4)    has been substantially diminished in value; or,

(5)    has been commingled with other property which cannot be divided without

difficulty; the United States, pursuant to Title 21, United States Code, Section 853, as incorporated

by Title 28, United States Code, Section 2461(c), intends to seek an Order of this Court forfeiting

any other property of said defendant up to the value of the property described in paragraphs B and

C above, all in violation of Title 18, United States Code, Sections 922 and 924(d).

A TRUE BILL:

_____
Foreperson

_____
LEURA GARRETT CANARY
UNITED STATES ATTORNEY

_____
John T. Harmon
Assistant United States Attorney

_____
Susan R. Redmond
Assistant United States Attorney

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:05-cr-216-MEF |
| | ) | |
| TIMOTHY WILLIAMS | ) | |

## PLEA AGREEMENT

DEFENSE COUNSEL:              JENNIFER A. HART

ASSISTANT U.S. ATTORNEY:     SUSAN R. REDMOND

## COUNTS AND STATUTES CHARGED:

Count 1.          21 U.S.C. 841(a)
                  Possession of a Controlled Substance With Intent to Distribute

Count 2.          18 U.S.C. 924(c)(1)(A)
                  Use/Possession of Firearm during Drug Trafficking Offense

Count 3.          18 U.S.C. § 922(g)(1)
                  Felon in Possession of a Firearm

## COUNTS PLEADING PURSUANT TO PLEA AGREEMENT:

Count 1.          21 U.S.C. 841(a)

Count 2.          18 U.S.C. 924(c)(1)(A)

## PENALTIES BY COUNT – MAXIMUM PENALTY:

Count 1.          21 U.S.C. 841(a) and (b)(1)(D)
                  NMT 5Y;
                  NMT $250,000; or both
                  NLT 2Y SUP REL;
                  $100 AF
                  VWPA.



Count 2.            18 U.S.C. 924(c)(1)(A)(i)
                    NLT 5Y; consecutive to any other sentence
                    NMT $250,000; or both
                    No Probation;
                    $100 AF;
                    VWPA.

## ELEMENTS OF THE OFFENSE:

### 21 USC 841(a):

    First:        The defendant knowingly and intentionally possessed a controlled substance
                      (marijuana); and

    Second:      The defendant possessed the controlled substance with the intent to distribute
                      it.

"Possession with intent to distribute" is defined as possession with intent to deliver or transfer
possession, with or without any financial interest in the transaction.

### 18 USC 924(c)(1)(A)(i):

    First:        The defendant committed a drug trafficking offense; and

    Second:      The drug trafficking offense may be prosecuted in a court of the United
                      States; and

    Third:        The defendant, in furtherance of the offense, possessed a firearm; and

    Fourth:      The defendant did so knowingly and willfully.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

    Susan R. Redmond, Assistant United States Attorney and Jennifer A. Hart, attorney for the

defendant, pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, as Amended, have,

with the authorization of the undersigned defendant, heretofore entered into discussions with a view

towards reaching a pretrial conclusion of the charge pending in the Indictment, and a Plea Agreement

has been reached by said parties. The plea is being submitted to the Court pursuant to Federal Rules

of Criminal Procedure 11(c)(1)(A), and the parties understand that, if the terms of the Plea

Agreement are not accepted by the Court, the defendant will be allowed to withdraw the defendant's

plea of guilty and proceed to trial. If the Court accepts this agreement, however and defendant

thereafter breaches this agreement, his guilty plea may not be withdrawn.

### GOVERNMENT'S PROVISIONS

1.      Upon entering a plea of guilty by the defendant to the offenses charged in the

Indictment, the attorney for the government will do the following:

a.      The government will agree, that a 2-level reduction in the applicable offense

level pursuant to U.S.S.G. § 3E1.1(a) for the defendant's acceptance of responsibility is appropriate,

so long as the defendant does not obstruct justice or otherwise fail to accept responsibility for the

offense conduct. Should the Government find the defendant assisted authorities in the investigation

or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea

of guilty, thereby permitting the Government to avoid preparing for trial and permitting the

Government and this Court to allocate their resources efficiently, the Government will move at

sentencing for a further reduction of one level, pursuant to U.S.S.G. § 3E1.1(b). Determination of

whether the defendant's obligations to qualify for the reduction pursuant to U.S.S.G. § 3E1.1 is at

the sole discretion of the United States.

b.      Should the defendant complete the defendant's obligations contained

within the Cooperation Agreement as set forth herein, the Government will move at sentencing

for a downward departure pursuant to U.S.S.G. § 5K1.1 and Title 18, United States Code,

3

Section 3553(e) to reflect the defendant's substantial assistance. In that motion, the Government will recommend a downward departure of at least three (3) levels. Determination of whether the defendant has met the defendant's obligations to qualify for the reduction pursuant to U.S.S.G. § 5K1.1 and Title 18, United States Code, Section 3553(e) is at the sole discretion of the United States. After sentencing, should Defendant provide further cooperation not contemplated by this agreement, the Government may file for a further reduction ( to include charges under 18 U.S.C., Section 924(c)) pursuant to Fed. R. Crim. P. 35. Determination of whether to file for a downward departure pursuant to Rule 35, and if a departure is filed, the level of that departure, is at the complete discretion of the Government.

c. The government agrees to recommend that the defendant receive a sentence at the low end of the applicable advisory guideline range as determined by the Court at sentencing.

d. The government agrees to dismiss Count 3 of the Indictment at sentencing.

2. The United States reserves the right to inform the Court and the Probation Department of all facts pertinent to the sentencing process, including all relevant information concerning the offenses and the defendant's background.

## DEFENDANT'S PROVISIONS

3. The defendant agrees to the following:

a. To plead guilty to counts 1 and 2 of the Indictment.

b. To cooperate with the government as set out in the cooperation agreement below.

4

      c.      To forfeit to the United States all firearms and ammunition described in Count 2 of the Indictment and as set out in the Forfeiture Allegation of the Indictment.

## COOPERATION AGREEMENT

The defendant agrees to cooperate fully and testify truthfully against any and all persons as to whom the defendant may have knowledge at the grand jury, trial, or whenever called upon to do so, including, but not limited to testifying against any codefendant choosing to proceed to trial. The defendant understands that this agreement does not require the defendant to implicate any other particular individual or individuals or to "make a case," rather it requires the defendant to be truthful and to testify truthfully whenever called upon. The defendant agrees to be available, if required, for the review of documents and other materials and for interviews by law enforcement officers and attorneys for the Government upon reasonable request and to fully and truthfully respond to all questions asked of the defendant by law enforcement officers and attorneys for the Government. The defendant agrees to fully and truthfully disclose to the Government everything the defendant knows about any and all documents and materials in the defendant's possession that relate to the violations charged in this Indictment and any other criminal violations in the Middle District of Alabama and elsewhere. The defendant agrees to submit to a polygraph examination conducted by the Government if requested to do so.

Provided that the defendant satisfies the terms of this Plea Agreement, any information that the defendant truthfully discloses to the Government during the course of the defendant's cooperation, concerning related offenses, will not be used against the defendant, directly or indirectly. The defendant understands that this agreement does not bar the defendant's prosecution

5

for capital felonies, perjury, false statements, and/or obstruction of justice.

If the defendant has failed or should fail in any way to fulfill completely the defendant's obligations under this agreement, then the Government will be released from its commitment to honor all of its obligations to the defendant. Thus, if at any time the defendant should knowingly and willfully withhold evidence from, or is found to have provided false information to, the Government investigators or attorneys prior to or during the defendant's testimony before grand juries or in trials, or fails to appear for any scheduled court appearance or any scheduled meeting with law enforcement agents in the Middle District of Alabama, then the Government will be free: (1) to prosecute the defendant for perjury, false declaration, false statement, and/or obstruction of justice (18 U.S.C. §§ 1621, 1623, 1001, 1503); (2) to prosecute the defendant for all violations of federal criminal law which the defendant has committed; (3) to use against the defendant in all of those prosecutions and sentencings the information and documents that the defendant has disclosed or furnished to the Government during the course of the defendant's cooperation; (4) to recommend a maximum sentence; (5) to seek forfeiture of any and all forfeitable properties of the defendant; (6) to seek forfeiture of any appearance bond made by the defendant if the defendant fails to appear in the Middle District of Alabama for any scheduled court appearance or any scheduled meeting with law enforcement agents; and (7) to prosecute the defendant for the defendant's failure to appear at any scheduled court appearance, pursuant to 18 U.S.C. 1073 or any other applicable state or federal criminal statute. The parties agree that the Government will have the sole discretion to decide whether defendant has breached this agreement.

6

## FACTUAL BASIS

The defendant admits the allegations charged in Count 1 of the Indictment and understands that the nature of the charge to which the plea is offered involves proof as to Count 1, that the defendant, on or about June 13, 2005, in the Middle District of Alabama, did knowingly and intentionally possess with intent to distribute marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

The defendant admits the allegations charged in Count 2 of the Indictment and understands that the nature of the charge to which the plea is offered involves proof as to Count 2, that the defendant on or about June 13, 2005, in the Middle District of Alabama, knowingly used and carried firearms, namely a Ruger, Model P89, 9mm pistol, serial # 311-98162; a Rossi, .38 caliber revolver, serial # W216081; a Strum Ruger, .223 caliber rifle, serial # 195-57105 and a Norinco, Model SKS, serial #01125 or 1701125 and ammunition during and in relation to and possessed said firearms and ammunition in furtherance of, a drug trafficking crime for which he may be prosecuted in a court of the United States, to-wit: possession with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 18, United States Code, Section 924(c)(1)(A).

## SENTENCING GUIDELINES AND RECOMMENDATIONS

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant

understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence and the sentencing guidelines, if any, applicable to defendant's case will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant agrees to have defendant's sentence determined under the sentencing guidelines, waives any constitutional challenge to the sentencing guidelines, waives indictment and trial by jury on all findings for sentencing, and stipulates that the Court may make all findings for sentencing and may make those findings by a preponderance of the evidence based upon any reliable evidence, including hearsay. Defendant understands that the Court is required to consider any applicable sentencing guidelines but may depart from these guidelines under some circumstances. Defendant acknowledges that defendant and defendant's attorney have discussed the sentencing guidelines and defendant understands how the guidelines are applicable to defendant's case.

## DEFENDANT'S WAIVER OF APPEAL AND COLLATERAL ATTACK

d. Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, the defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the sentence. Defendant further expressly waives the right to appeal the conviction and sentence on any other ground, including upward departure(s), and waives the right to attack the conviction and sentence in any post-conviction proceeding. This waiver does not include the right to appeal on the ground of ineffective assistance of counsel or prosecutorial misconduct.

In return for the above waiver by the defendant, the Government does not waive its right to

appeal the sentence imposed in the instant case. The Government does not waive its right to appeal any order dismissing the Indictment, vacating a sentence, or otherwise terminating the prosecution at any stage of the proceedings. Further, the parties agree that nothing in this agreement shall affect the Government's right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b). However, if the United States appeals the defendant's sentence pursuant to 18 U.S.C. § 3742(b), the defendant is released from this waiver.

### DEFENDANT'S UNDERSTANDING AND ACKNOWLEDGMENT

4.      The defendant, before entering a plea of guilty to the Indictment as provided for herein by said Plea Agreement, advises the Court that:

a.      The discussions between the attorney for the government and the attorney for the defendant towards reaching an agreed plea in this case have taken place with the defendant's authorization and consent.

b.      Defendant acknowledges that a breach of this federal plea agreement, to include committing another federal, state, or local offense prior to sentencing on the pending charge, will not entitle him to withdraw his guilty plea in this case. Defendant understands and acknowledges that defendant's guilty plea will remain in full force and effect upon any breach of this agreement by the defendant. Defendant further understands that should he breach this agreement, this agreement will be null and void and he will be prosecuted for all offenses of which the government has knowledge. The parties agree that the Government will be the sole authority to decided whether Defendant has breached this Agreement.

9

      c.     The defendant further understands that, pursuant to Title 18, United States Code, Section 3013, said $100.00/count assessment fee is to be paid by the defendant on the date of sentencing. The defendant will make an honest, good faith effort to pay said fine as directed by the Financial Litigation Section of the United States Attorney's Office. The defendant further understands that by completing the financial statement, the defendant is representing that it is true and accurate to the best of the defendant's indictment, knowledge, and belief.

      d.     The defendant understands that the defendant has a right to be represented by an attorney at every stage of the proceedings against the defendant herein and is represented by the defendant's undersigned attorney.

      e.     The defendant understands that the defendant has the right to plead not guilty and has the right to be tried by a jury and, at a trial thereof, has the right to the assistance of counsel, the right to confront and cross-examine witnesses against the defendant, the right to call witnesses in the defendant's own behalf, and the right not to be compelled to incriminate the defendant, and that if the defendant enters a plea of guilty herein, there will not be a further trial of any kind and that by the entry of such a plea, the defendant waives the right to a trial by jury or to a trial before the Court.

      f.     The defendant further understands that in entering a plea of guilty herein, the Court may ask questions about the offense to which the plea is entered and further understands that if the defendant answers these questions under oath, on the record, and in the presence of counsel, which questions and answers would be recorded, that the answers may later be used against the

10

defendant in a prosecution for perjury or false statement if the answers are not truthful.

g.     The defendant further understands and advises the Court that the Plea Agreement as set forth herein and the plea to be entered by the defendant as a result thereof is voluntary on the defendant's part and is not the result of any force or threats or of any promises apart from the aforesaid Plea Agreement. The defendant further advises the Court that the Plea Agreement set forth herein is the result of prior discussions between the attorney for the government, the attorney for the State and the attorney for the defendant, all conducted with the defendant's authorization, knowledge, and consent.

h.     The defendant further advises the Court that the defendant's understanding of this Plea Agreement is as set forth in this document.

i.     The defendant further advises the Court that it is understood that the government can only make a recommendation which is not binding on their respective Courts.

j.     The defendant further advises the Court that the defendant understands and has been advised that evidence of a plea of guilty, later withdrawn or an offer to plead guilty to the crimes charged in the Indictment herein, or of statements made in connection with and relevant to said plea or offer to plead, shall not be admissible in any civil or criminal proceedings against the defendant. However, the defendant does understand that evidence of a statement made in connection with and relevant to a plea of guilty, later withdrawn, or an offer to plead guilty to the crimes charged in the Indictment herein, is admissible in a criminal proceeding for perjury or false statement when the statement was made by the defendant under oath, on the court record, and in the presence of

11

counsel.

      k.      The defendant is satisfied that defense counsel has been competent and effective in representing defendant.

      5.      The undersigned attorneys for the government and for the defendant represent to the court that the foregoing Plea Agreement is the agreement of the parties that has been reached pursuant to the Plea Agreement procedure provided for in Rule 11, Federal Rules of Criminal Procedure, as Amended. The attorney for the defendant further advises the Court that the defendant has been advised of the nature of the charges to which the foregoing described plea is to be offered, and that the defendant has been advised of the defendant's right to plead not guilty and to be tried by a jury on all issues herein; of the maximum possible penalty provided by law; that by the entering of a plea of guilty as aforesaid, the defendant waives the right to be tried by a jury or by the Court, waives the right to confront and cross-examine witnesses against the defendant and the right not to be compelled to incriminate the defendant; and that if the defendant pleads guilty, there will not be a further trial of any kind. Further, the defendant has been advised that if the defendant pleads guilty, the Court may ask questions about the offense to which the defendant has pleaded and that if the plea is rejected or later withdrawn, that the answers to such questions may not be used against the defendant in a civil or criminal proceeding, but that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement if the answers are not truthful.

      6.      The defendant understands that the United States Probation Office will prepare a presentence investigation report for the Court. The Probation Officer will consider the defendant's

conduct related to the offense to which the plea is offered, as well as the defendant's criminal history. The offense level or criminal history category, as calculated by the Probation Officer and determined by the court, may differ from that projected by defendant's counsel or the United States Attorney. In the event that the Court determines the defendant's offense level or criminal history category to be higher than the defendant anticipated, the defendant will have no right to withdraw the plea on that basis.

This **30**th day of May, 2006.

Respectfully submitted,

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

Andrew O. Schiff
Deputy Chief - Criminal Division
U.S. Attorney's Office
One Court Square, Suite 201
Montgomery, Alabama 36104

Susan R. Redmond
Assistant U.S. Attorney

13

I have read the foregoing Plea Agreement, understand the same, and the matters and facts set forth therein accurately and correctly state the representations that have been made to me and accurately set forth the conditions of the Plea Agreement that has been reached.

IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS" PARAGRAPH ABOVE ARE TRUE AND CORRECT AND THAT I AM SATISFIED THAT I HAVE RECEIVED COMPETENT ADVICE AND REPRESENTATION FROM MY DEFENSE COUNSEL, JENNIFER A. HART.

_____
**Timothy Williams**
Defendant

5/31/06
Date

_____
**Jennifer A. Hart**
**Attorney for Defendant**

5/31/06
Date

14

1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF **ALABAMA**

NORTHERN DIVISION


UNITED STATES OF AMERICA

      vs.                                    CASE NO:  2:05cr216-MEF

TIMOTHY WILLIAMS,

          Defendant.



\* \* \* \* \* \* \* \* \* \*

CHANGE OF PLEA HEARING

\* \* \* \* \* \* \* \* \* \*

BEFORE THE HONORABLE SUSAN RUSS WALKER, UNITED STATES MAGISTRATE JUDGE, at Montgomery, Alabama, on Wednesday, May 31, 2006, commencing at 3:58 p.m.

APPEARANCES:

FOR THE GOVERNMENT:      Ms. Susan R. Redmond
                          Assistant United States Attorney
                          OFFICE OF THE UNITED STATES ATTORNEY
                          One Court Square, Suite 201
                          Montgomery, Alabama  36104

FOR THE DEFENDANT:       Ms. Christine A. Freeman
                          Executive Director
                          FEDERAL DEFENDERS
                          MIDDLE DISTRICT OF ALABAMA
                          201 Monroe Street, Suite 407
                          Montgomery, Alabama  36104

Proceedings reported stenographically;
transcript produced by computer.

2

1          (The following proceedings were heard before the Honorable

2           Susan Russ Walker, United States Magistrate Judge, at

3           Montgomery, Alabama, on Wednesday, May 31, 2006, commencing

4           at 3:58 p.m.:)

5      (Call to Order of the Court)

6           THE COURT:  This is United States versus Timothy

7      Williams, 2:05cr216.  We are here for a change of plea.

8           Mr. Williams, go ahead and stand, if you would.

9           Previously, the Court was informed that the defendant

10     wishes to change his plea and consents to having the guilty plea

11     proceedings conducted by a United States magistrate judge.  I am

12     a United States magistrate judge.  The next higher ranking judge

13     is a district judge, and you have a right to have a district

14     judge take your plea.  If you wish to have me take your plea

15     today, you need to read and sign the consent form that's been

16     provided to you.

17         (The defendant and Ms. Freeman comply)

18          MS. FREEMAN:  Your Honor, Mr. Williams has signed a

19     consent form.

20          THE COURT:  Okay.  Would counsel briefly summarize the

21     terms of the plea agreement, please?

22          MS. REDMOND:  Would you prefer I do?

23          Judge, this is a plea agreement entered into by the

24     parties pursuant to Rule 11(c)(1)(A) of the Federal Rules of

25     Criminal Procedure.  In this agreement, the government's

United States of America v. Timothy Williams    2:05cr216-MEF    5/31/2006

**3**

1   provisions are as follows, that the -- we will agree to
2   recommend that two levels, pursuant to acceptance of
3   responsibility, in terms of a downward departure, be given to
4   the defendant and a third point to be motioned for by the
5   government, should the defendant continue to timely notify
6   authorities of his intention to enter a plea of guilty, to
7   accept responsibility, and to not obstruct justice or otherwise
8   fail to accept responsibility.
9       Further, the government agrees that pursuant to United
10  States Sentencing Guideline 5K1.1 and Title 18, Section 3553(e),
11  that should the government find that the defendant has provided
12  substantial assistance to the -- substantial assistance to the
13  government, it will agree to recommend a downward departure of
14  at least three levels at sentencing. Said determination is at
15  the discretion of the United States.
16      Further, after sentencing, should the defendant
17  continue to provide cooperation not contemplated by this
18  agreement, the government may file a further reduction pursuant
19  to federal rule of criminal -- rules of procedure 35. And if
20  the government makes the determination to file such downward
21  departure, it will at that time also make the determination as
22  to whether or not that downward departure motion can and will
23  affect the Title 18, Section 924(c) charge, which I believe is
24  count two of the indictment.
25      And further, we agree to recommend that the defendant

**4**

1   receive a sentence at the low end of the applicable advisory
2   guideline range, as determined by the Court at sentencing. We
3   agree to dismiss count three of the indictment.
4       The defendant agrees to plead guilty to counts one and
5   two of the indictment, to cooperate with the government, as set
6   out in the cooperation agreement contained in the body of the
7   plea agreement, to forfeit to the United States all firearms and
8   ammunitions described in count two of the indictment and as set
9   out in the forfeiture allegation of the indictment.
10      Further, the defendant agrees that the sentencing
11  guidelines and recommendations -- to be bound by the advisory
12  sentencing guidelines and recommendations determined by the
13  sentencing court at sentencing. The defendant waives appeal and
14  collateral attack, including upward departure, and waives the
15  right to attack conviction and sentence in any postconviction
16  proceeding. And I believe those are the salient terms of the
17  agreement.
18      THE COURT: Anything else, Ms. Freeman?
19      MS. FREEMAN: No, Your Honor. We agree that those
20  terms are all reflected in this agreement.
21      THE COURT: All right. Let's swear in the defendant.
22      THE CLERK: If you would raise your right hand.
23      (The defendant is sworn)
24      THE COURT: Mr. Williams, do you understand that you
25  are now under oath and that if you answer any of the questions

**5**

1   asked here falsely, your answers may later be used against you
2   in another prosecution for perjury or making a false statement?
3       THE DEFENDANT: Yes.
4       THE COURT: Would you state your name, please.
5       THE DEFENDANT: Timothy Williams.
6       THE COURT: How old are you?
7       THE DEFENDANT: 39.
8       THE COURT: How far did you go in school?
9       THE DEFENDANT: Twelfth.
10      THE COURT: Have you been treated recently for any
11  mental illness or addiction to narcotic drugs of any kind?
12      THE DEFENDANT: No, ma'am.
13      THE COURT: Are you currently under the influence of
14  any drug, medication, or alcoholic beverage of any kind?
15      THE DEFENDANT: No, ma'am.
16      THE COURT: Have you received a copy of the indictment
17  pending against you; that is, the written charges made against
18  you in this case?
19      THE DEFENDANT: Yes.
20      THE COURT: Have you fully discussed those charges and
21  the case in general with Ms. Freeman and -- is it Ms. Hart,
22  also?
23      MS. FREEMAN: Yes, Your Honor. Ms. Hart is his primary
24  attorney. I'm standing in for her today.
25      THE COURT: Okay. With Ms. Freeman and Ms. Hart, as

**6**

1   your counsel?
2       THE DEFENDANT: Yes.
3       THE COURT: Are you fully satisfied with the counsel,
4   representation, and advice given to you in this case by your
5   attorneys, Ms. Freeman and Ms. Hart?
6       THE DEFENDANT: Yes.
7       THE COURT: There is a written plea agreement in this
8   case. Did you have the opportunity to read and discuss the plea
9   agreement with your lawyers before you signed it?
10      THE DEFENDANT: Yes.
11      THE COURT: Does the plea agreement represent in its
12  entirety any understanding that you have with the government?
13  In other words, is all of your agreement written down in that
14  written plea agreement?
15      THE DEFENDANT: Yes.
16      THE COURT: Do you understand the terms of the plea
17  agreement?
18      THE DEFENDANT: Yes, ma'am.
19      THE COURT: Has anyone made any other or different
20  promise or assurance of any kind to you in an effort to induce
21  you to plead guilty in this case?
22      THE DEFENDANT: No, ma'am.
23      THE COURT: Do you understand that if the court chooses
24  not to follow the terms of the plea agreement, the judge will
25  give you the opportunity to withdraw your plea of guilty; and

United States of America v. Timothy Williams    2:05cr216-MEF    5/31/2006

4 (Pages 7 to 10)

### 7

1  that if you choose not to withdraw your plea, he may impose a
2  more severe sentence without being bound by the plea agreement?
3  THE DEFENDANT: Yes, ma'am.
4  THE COURT: Has anyone attempted in any way to force
5  you to plead guilty in this case?
6  THE DEFENDANT: No, ma'am.
7  THE COURT: Are you pleading guilty of your own free
8  will because you are guilty?
9  THE DEFENDANT: Yes, ma'am.
10  THE COURT: Do you understand that the offenses to
11  which you are pleading guilty are felony offenses; that if your
12  plea is accepted, you will be adjudged guilty of those offenses;
13  and that such adjudication may deprive you of valuable civil
14  rights, such as the right to vote, the right to hold public
15  office, the right to serve on a jury, and the right to possess
16  any kind of firearm?
17  THE DEFENDANT: Yes, ma'am.
18  THE COURT: The maximum penalty provided by law for
19  counts one and two is as follows. For count one, no more than
20  $250,000 fine, no more than five years' imprisonment, or both
21  the fine and the imprisonment, no less than two years'
22  supervised release, a $100 assessment fee, and you may be asked
23  to make restitution to any victim of the offense. For count
24  two, the maximum punishment is no more than $250,000 fine, no
25  less than five years' imprisonment, or both the fine and the

### 8

1  imprisonment, no probation, a $100 assessment fee. And again,
2  you may be asked to make restitution to any victim of the
3  offense.
4  And my note here says consecutive to any other
5  sentence.
6  MS. REDMOND: That is correct. The 924 will run
7  consecutive to any other sentence in the case.
8  THE COURT: All right. Do you understand the limits of
9  punishment in this case?
10  THE DEFENDANT: Yes, ma'am.
11  THE COURT: With regard to supervised release, do you
12  understand that if you violate the conditions of supervised
13  release, you can be given additional time in prison?
14  THE DEFENDANT: Yes, ma'am.
15  THE COURT: Do you understand that you must pay a
16  special assessment fee of $100 for each count?
17  THE DEFENDANT: Yes, ma'am.
18  THE COURT: And do you understand that you must forfeit
19  pursuant to the terms of the forfeiture agreement in this case?
20  THE DEFENDANT: Oh, yes, ma'am.
21  THE COURT: I should have said forfeit the weapons. Do
22  you understand that?
23  THE DEFENDANT: Yes, ma'am.
24  THE COURT: Do you understand that under the Sentencing
25  Reform Act of 1984, the United States Sentencing Commission has

### 9

1  issued guidelines for judges to follow in determining the
2  sentence in a criminal case?
3  THE DEFENDANT: Yes, ma'am.
4  THE COURT: And do you understand that under recent
5  Supreme Court decisions, those guidelines are now considered to
6  be advisory guidelines?
7  THE DEFENDANT: Yes, ma'am.
8  THE COURT: Have you and your attorney talked about how
9  the advisory sentencing guidelines might apply to your case?
10  THE DEFENDANT: Yes, ma'am.
11  THE COURT: And do you understand that in your plea
12  agreement, you've agreed to be bound by the advisory sentencing
13  guidelines?
14  THE DEFENDANT: Yes, ma'am.
15  THE COURT: Do you understand that parole has been
16  abolished and that if you are sentenced to prison, you will not
17  be released on parole?
18  THE DEFENDANT: Yes, ma'am.
19  THE COURT: Do you understand that under some
20  circumstances, you or the government may have the right to
21  appeal any sentence that the court imposes?
22  THE DEFENDANT: Yes.
23  THE COURT: And do you understand that by entering into
24  this plea agreement and entering a plea of guilty, you will have
25  waived, or given up, your right to appeal or to collaterally

### 10

1  attack all or part of this sentence, except as provided in the
2  plea agreement?
3  THE DEFENDANT: Yes.
4  THE COURT: Do you understand that you have the right
5  to plead not guilty to any offense charged against you and to
6  persist in that plea; that you would then have the right to a
7  trial by jury; that at trial, you would be presumed to be
8  innocent and the government would have to prove your guilt
9  beyond a reasonable doubt?
10  THE DEFENDANT: Yes, ma'am.
11  THE COURT: Do you understand that you would have the
12  right to the assistance of counsel for your defense, the right
13  to see and hear all the witnesses and have them cross-examined
14  in your defense --
15  THE DEFENDANT: Yes, ma'am.
16  THE COURT: -- the right on your own part to decline to
17  testify unless you voluntarily elected to do so in your own
18  defense, and the right to the issuance of subpoenas or
19  compulsory process to compel the attendance of witnesses to
20  testify in your defense?
21  THE DEFENDANT: Yes, ma'am.
22  THE COURT: Do you understand that should you decide
23  not to testify or put on any evidence, these facts cannot be
24  used against you?
25  THE DEFENDANT: Yes, ma'am.

---

**11**

1    THE COURT: Do you further understand that by entering
2  a plea of guilty, if that plea is accepted by the district
3  judge, there will be no trial and you will have waived, or given
4  up, your right to a trial as well as those other rights
5  associated with a trial, as I just described them?
6    THE DEFENDANT: Yes, ma'am.
7    THE COURT: The charges to which you are pleading
8  guilty are set out in counts one and two of the indictment.
9  Count one charges that on or about June 13th, 2005, in
10  Montgomery, Alabama, in the Middle District of Alabama, that you
11  knowingly and intentionally possessed with intent to distribute
12  marijuana, a Schedule I controlled substance, in violation of 21
13  U.S.C., Section 841(a)(1).  And count two charges that on or
14  about June 13th, 2005, in Montgomery, Alabama, in the Middle
15  District, that you knowingly used and carried during and in
16  relation to and did knowingly possess in furtherance of a drug
17  trafficking crime, as set forth in count one, a firearm --
18  specifically, a Ruger, Model P89, nine-millimeter pistol with
19  the serial number as set out in the indictment, a Rossi .38
20  caliber revolver with the serial number set out in the
21  indictment, a Strum Ruger .223 caliber rifle with the serial
22  number set out in the indictment, and a Norinco, Model SKS, with
23  alternate serial numbers set out in the indictment -- in
24  violation of 18 U.S.C., Section 924(c)(1)(A).  Do you understand
25  that those are the two charges you're pleading guilty to today?

---

**12**

1    THE DEFENDANT: Yes, ma'am.
2    THE COURT: The elements of these offenses which the
3  government would have to prove in your case beyond a reasonable
4  doubt are, with regard to the 21 U.S.C., Section 841(a) offense
5  first, that you knowingly and intentionally possessed a
6  controlled substance -- that is, marijuana; second, that you
7  possessed the controlled substance with the intent to distribute
8  it.  And the elements of the 924(c) offense are, first, that you
9  committed a drug trafficking offense; second, that that offense
10  may be prosecuted in a court of the United States; third, that
11  you, in furtherance of the offense, possessed a firearm; and
12  fourth, that you did so knowingly and willfully.  Do you
13  understand those elements?
14    THE DEFENDANT: Yes, ma'am.
15    THE COURT: I need to find whether or not there is a
16  factual basis for the plea.  How would you like to proceed?
17    MS. FREEMAN: Your Honor, may I ask questions of
18  Mr. Williams?
19    THE COURT: Yes.  Thank you.
20    MS. FREEMAN: Mr. Williams, on June 13th, 2005, were
21  you in Montgomery County?
22    THE DEFENDANT: Yes.
23    MS. FREEMAN: And on that date, did you possess a
24  quantity of marijuana?
25    THE DEFENDANT: Yes.

---

**13**

1    MS. FREEMAN: And did you -- were you aware that you
2  possessed that quantity of marijuana?
3    THE DEFENDANT: Yes.
4    MS. FREEMAN: And did you possess that marijuana with
5  the intent to distribute it?
6    THE DEFENDANT: Yes.
7    MS. FREEMAN: Did you also at the same time and in the
8  same place on that day, June 13th, 2005, possess the four
9  firearms that are named in the indictment?
10    THE DEFENDANT: Yes.
11    MS. FREEMAN: And do you agree with me that information
12  provided to us by the government, to which we will stipulate,
13  would establish that -- excuse me.  Your Honor, I believe I've
14  laid a factual basis.
15    THE COURT: All right.  Is there any disagreement that
16  this drug trafficking --
17    MS. FREEMAN: One other question.  Did you possess
18  those firearms in furtherance of your intent to possess and
19  distribute marijuana?
20    THE DEFENDANT: Yes.
21    THE COURT: Is there any disagreement that this offense
22  may be prosecuted in a court of the United States; that is, the
23  possession of controlled substance?
24    MS. FREEMAN: No, Your Honor.
25    THE COURT: Since that is an element.  Any further

---

**14**

1  questions from the government?
2    MS. REDMOND: Judge, the only question the government
3  would have is whether the defense will stipulate that Montgomery
4  County, Alabama, is within the Middle District of Alabama.
5    MS. FREEMAN: We would stipulate to that, Your Honor.
6    THE COURT: How do you now plead to the charges against
7  you in counts one and two of the indictment, guilty or not
8  guilty?
9    THE DEFENDANT: Guilty.
10    THE COURT: It is the finding of the Court in the case
11  of United States versus Timothy Williams that the defendant is
12  fully competent and capable of entering an informed plea, that
13  the defendant is aware of the nature of the charges and the
14  consequences of the plea, and that the plea of guilty is a
15  knowing and voluntary plea supported by an independent basis in
16  fact containing each of the essential elements of the offense.
17  The plea is therefore accepted, and the defendant is now
18  adjudged guilty of those offenses.
19    A written presentence report will be prepared by the
20  probation office to assist the court in sentencing.  You'll be
21  asked to give information for the report, and your attorney may
22  be present for that if you wish.  The court will permit you and
23  your counsel to read the presentence report and file any
24  objections to it before the sentencing hearing, and you and your
25  counsel will have the opportunity to speak on your behalf at the

---

United States of America v. Timothy Williams    2:05cr216-MEF                              5/31/2006

15

1  sentencing hearing. The date for your sentencing will be set by
2  order.
3          And this is a case in which there is a presumption of
4  detention. Let me just ask the government. I've --
5          MS. FREEMAN: Your Honor, I actually believe that the
6  presumption does not apply to this case.
7          THE COURT: All right. Let -- I need to ask that.
8  I've got two draft detention release orders pending sentencing,
9  one from yesterday in which the box indicating that this was an
10  offense for which the maximum sentence was life imprisonment or
11  death was checked. And that's not correct, right?
12          MS. REDMOND: That is --
13          THE COURT: That is correct?
14          MS. REDMOND: Excuse me, Judge. I believe so.
15          THE COURT: All right. And the second one tells me the
16  maximum term of imprisonment is ten years or more, and it's
17  checked at a different point. I need to know which of these is
18  correct, first of all.
19          MS. REDMOND: I think it's the first one, Judge. And
20  let me be clear. 924(c) is not less than five years, and I
21  believe it's a term up to life.
22          THE COURT: Okay. So you think on this form -- is this
23  a form that you prepared or the probation officer prepared?
24          PROBATION OFFICER: The pretrial office prepared it.
25          THE COURT: Okay. Well, I've got two different ones.

16

1  But would you agree on behalf of Pretrial that B should be
2  checked, then?
3          PROBATION OFFICER: I agree with her that it's up to
4  life, the one that's up to life.
5          THE COURT: And what does the defendant say?
6          MS. FREEMAN: Your Honor, we would disagree in that the
7  plea agreement also requires a sentence at the low end. The low
8  end of 924(c) is five years. And that's what he will receive on
9  the 924(c)(1) unless there's a violation of the plea agreement
10  or it's withdrawn. As to count one, the maximum punishment is
11  five years, as stated in the plea agreement.
12          THE COURT: I think the issue is not what the agreement
13  is to, but what is the maximum term prescribed in the Controlled
14  Substances Act. So it appears to me that this is one in
15  which -- this is a plea of guilty to an offense for which the
16  maximum sentence is life imprisonment or death. Is death an
17  option in this case?
18          MS. REDMOND: I don't believe so.
19          MS. FREEMAN: Your Honor --
20          THE COURT: That needs to be marked out, surely,
21  although I do understand that he -- that the plea agreement
22  specifies a term shorter. So I'll accept that first of all, the
23  correct finding is that pursuant to the Crime Control Act of
24  1990, defendant has entered a plea of guilty to an offense for
25  which the maximum sentence is life imprisonment.

17

1          Now, is there disagreement over whether there is a
2  presumption; that is, whether I would have to find exceptional
3  reasons why his detention would not be appropriate? Let me
4  start with the government. What does the government say in this
5  case?
6          MS. REDMOND: Judge, looking at the provisions of 3143
7  of Title 18, release or detention of a defendant pending
8  sentence or appeal, unless you find that there is a substantial
9  likelihood that a motion for acquittal or new trial will be
10  granted, you then have to look to the government. And the
11  government has to recommend that no sentence of imprisonment be
12  imposed on the person and that you have to find by clear and
13  convincing evidence that the person is not likely to flee or
14  pose a danger to any other person or the community.
15          The government affirms that it is not going to
16  recommend that no sentence of imprisonment be imposed on
17  Mr. Williams. Therefore, pursuant to 3143, I think you are
18  mandated to order him into the custody of the marshals.
19          MS. FREEMAN: Your Honor, I would disagree with that
20  interpretation of 3145(c), which also applies. Under 3145(c),
21  where a person is subject to detention pursuant to 3143(a)(2),
22  which I believe is what we're going on here, and if that person
23  meets the conditions of release set forth in 3143(a)(1) or
24  (b)(1), which relate to not likely to flee or pose a danger to
25  the safety of a person or the community, then that person may be

18

1  ordered released under appropriate conditions by the judicial
2  officer if it is clearly shown that there are exceptional
3  reasons why detention would not be appropriate. There are
4  exceptional reasons present in this case.
5          THE COURT: All right. Let me make sure I understand
6  what the disagreement is. The government does not even believe
7  I can find exceptional reasons, or you do?
8          MS. REDMOND: That is correct. I don't think you get
9  to that point under 3143.
10          THE COURT: All right. Let me look at that first. And
11  that's 3143(a)(2) that you're talking about?
12          MS. REDMOND: Yes, ma'am.
13          THE COURT: Okay. So I guess the first thing I've got
14  to determine is whether he has been found guilty of an offense
15  in a case described in subparagraph (A), (B), or (C) of
16  subsection (f)(1) of 3142, so let me turn to that. Okay. Is
17  this a crime of violence?
18          MS. FREEMAN: No, it is not, Your Honor.
19          THE COURT: Or it's (B) that we --
20          MS. REDMOND: No, ma'am. It's going to come under
21  (1) -- excuse me -- (f)(1)(B).
22          THE COURT: (B). Okay.
23          MS. REDMOND: And Judge, if I might, if the Court will
24  recall, the defendant was previously detained upon motion of the
25  government and finding by the Court. The government then, as

### 19

1  part of his cooperation agreement, asked that he be released for
2  the purposes of serving or meeting the terms of his cooperation
3  agreement.  He has met the terms of that cooperation agreement.
4  And there is no need, per the government, for him to further
5  remain out, which is why we are not asking that he remain out.
6      THE COURT:  Okay.  And I may get to argument on that
7  question in just a minute.
8      MS. FREEMAN, I'll hear you.  Let me just finish reading
9  this so I know what I'm –
10     MS. FREEMAN:  May I speak with Ms. Redmond while
11  you're –
12     THE COURT:  You certainly may.
13     (Brief pause)
14     THE COURT:  All right.  I've reviewed the statute, and
15  it does appear to me that this is governed by 3143(a),
16  subsection (2).  And that section does provide under (A)(ii)
17  that an attorney for the government does have to recommend that
18  no sentence of imprisonment be imposed on the person unless I
19  find a substantial likelihood that a motion for acquittal or for
20  a new trial would be granted –
21     MS. FREEMAN:  Your Honor –
22     THE COURT:  – for the defendant to be released.  You
23  can respond.
24     MS. FREEMAN:  Thank you.  3145(c) clearly applies, and
25  that does not require a motion by the government.  And it

### 20

1  specifically addresses a person subject to detention under
2  3143(a)(2) or (b)(2) who meets –
3      THE COURT:  All right.  Hold on just a minute.  I'm
4  sorry.  You're talking about 3145(c)?
5      MS. FREEMAN:  Yes, Your Honor.  I would also state –
6      THE COURT:  Let me read this one, Ms. Freeman, and then
7  I'll hear from you.
8      MS. FREEMAN:  Yes.
9      THE COURT:  Yes.  The government – there does appear
10  to be some contradiction here.  This refers to 3143(a)(2) or
11  (b)(2) and suggests that that individual may be ordered released
12  under appropriate conditions if there are exceptional reasons,
13  which is somewhat inconsistent with 3143(a)(2).  Can you explain
14  the inconsistency?
15     MS. REDMOND:  And I believe I've actually taken this
16  issue up before the district court, Judge.  Reading 3145(c), an
17  appeal from a release or detention order or from a decision
18  denying revocation or amendment of such an order is governed by
19  the provisions of Section 1291, Title 28, and Section 3731 of
20  this title.
21     THE COURT:  I think you can skip to the sentence
22  beginning, A person subject to detention.
23     MS. REDMOND:  To detention, pursuant to 3143(a)(2),
24  which I think we are all in agreement applies in this case, and
25  who meets the conditions of release set forth in Section

### 21

1  3143(a)(1) or (b)(1), may be ordered released.  And if I look at
2  3143 –
3      THE COURT:  I'm looking at (a)(1).  And that is the
4  substantial likelihood that a motion for acquittal or new trial
5  will be granted.  And we –
6      MS. REDMOND:  The Court needs to make a determination
7  as to whether or not the Court finds that that is a likelihood.
8      THE COURT:  I don't find that to be a likelihood, given
9  the plea of guilty.
10     MS. FREEMAN:.  Your Honor, you're not looking at the
11  appropriate sentence.  3143(a)(1) is not 3143(a)(2)(A)(i).
12     THE COURT:  Okay.
13     MS. FREEMAN:  3143(a)(1) simply refers to findings by
14  clear and convincing evidence that a person is not likely to
15  flee or pose a danger to the safety of any other person or the
16  community.
17     THE COURT:  Okay.  Stop for just a second.  Let me do
18  this again.
19     So what you're saying is 3143(a)(1) is that sentence
20  fragment that says except as provided in paragraph (2)?
21     MS. FREEMAN:  Yes, Your Honor.
22     THE COURT:  That's where it begins.
23     MS. FREEMAN:  The substantial likelihood section is
24  under 3143(a)(2).
25     THE COURT:  Yes.  I see what you're saying.

### 22

1      MS. FREEMAN:  And Your Honor, I have case law
2  supporting my interpretation of these statutes.
3      THE COURT:  It may be that I'm going to have to go look
4  at the cases.
5      You have some, too, right?  Is that what you want to
6  tell me, Ms. Redmond?
7      MS. REDMOND:  No, Judge.  I think I just wanted to make
8  a quick argument.  In reading 3143(a)(1) – and I think what's
9  applicable – and I don't disagree with Ms. Freeman – that if
10  we do not recommend a term of imprisonment, that person should
11  be detained unless the Court finds by clear and convincing
12  evidence that the person is not likely to flee or pose a danger
13  to the safety of any other person or the community if released
14  under Section 3142(b) or (c).
15     And I think the argument the government has is that
16  924(c) is a crime of violence, and the defendant has just pled
17  guilty to it, possession of firearms during the commission of a
18  drug trafficking offense.  Perhaps the Court is aware – I am
19  unaware of any conditions – and perhaps Probation can speak to
20  it, if it knows – that the Court can mandate in this case which
21  would protect the community and prevent the defendant from
22  acting in a manner inconsistent with the crime to which he has
23  pled guilty.
24     MS. FREEMAN:  Your Honor, 924(c) is not a crime of
25  violence.  In addition, Mr. Williams has been on release without

United States of America v. Timothy Williams    2:05cr216-MEF    5/31/2006

8 (Pages 23 to 26)

23

1  any violations. He has been cooperating with the government,
2  including up to today meeting with an agent of law enforcement.
3  He has met with agents of three different law enforcement
4  agencies, both state and federal, and he has appeared here in
5  court on his own yesterday and today, knowing that this
6  controversy existed.
7      THE COURT: How long has he been released?
8      MS. FREEMAN: Your Honor, I apologize. I do not know
9  that. I know that this case --
10     THE COURT: Well, approximately. And was he released
11 to the custody of an officer or just on his own?
12     MS. FREEMAN: He is on his own now and under
13 supervision of pretrial release. And we were appointed in this
14 case on September 19th, 2005. But I don't know at what point he
15 was not detained.
16     MS. REDMOND: And if you will give me just a minute --
17     THE COURT: I will.
18     MS. REDMOND: -- I should have that. Judge, we filed
19 on December 5th, 2005, a motion to release the defendant into
20 the custody of the United States -- excuse me -- from the United
21 States Marshal Service to officers with United States Secret
22 Service. And then on January 11th, 2006, the Court granted the
23 motion to -- and I believe it's approximately January 11th --
24 ordered that the defendant be released per request of the --
25 excuse me -- of the government. And Judge --

24

1      THE COURT: And then he did not remain in the custody
2  of the Secret Service officer?
3      MS. REDMOND: That is correct.
4      THE COURT: Okay.
5      MS. REDMOND: He went to supervision of probation or
6  pretrial services, Jason --
7      THE COURT: And how did that occur?
8      MS. REDMOND: Pardon me?
9      THE COURT: I'm sorry. How did that occur?
10     MS. REDMOND: Upon our request.
11     THE COURT: Okay. So there was yet another bond
12 hearing of some kind?
13     MS. REDMOND: Yes, ma'am. And I was trying to find it,
14 and I know it occurs sometime after January.
15     THE COURT: All right. Let me do a couple of things.
16 I'll go ahead and ask Probation, since they're here, is there a
17 recommendation with regard to whether he be held or not. And
18 then we'll go back to this sort of legal maze of how the
19 statutes fit together.
20     PROBATION OFFICER: Your Honor, I do not have a
21 recommendation, because I have not supervised him. It is my
22 understanding, too, that is a crime of violence, carrying a
23 firearm in furtherance of a drug trafficking offense. But I
24 believe that in the report Jason Dillon gave you -- and he has
25 supervised him -- that he said that he has generally complied

25

1  with supervision. But because it was an automatic remand, he
2  went along with that. I believe that was the way he worded it.
3      THE COURT: That's right. The recommendation is that
4  he be remanded to the custody of the marshal unless exceptional
5  circumstances are given by the AUSA or defense counsel. So
6  everybody seems to be confused about how these statutes apply.
7      Let me go back to that just for a moment. Does the
8  government still contend that I cannot find exceptional reasons,
9  that that's not an option under these circumstances?
10     MS. REDMOND: Judge, the position that the government
11 takes is that the Court should be bound by 3142. I don't
12 disagree that 3143 -- I'm sorry. The Court should be bound by
13 3143. I don't have a means and I don't disagree that 3145(c)
14 puts everything into question. And quite honestly, I am not
15 sure how to interpret that in relation to 3143, because it seems
16 to mandate.
17     THE COURT: All right. It is confusing. I'm sure
18 there is some case law on this.
19     Ms. Freeman, did you have a cite for me?
20     MS. FREEMAN: Yes, I do, Your Honor, thanks to Robin
21 Konrad, who's present in the courtroom. There are two
22 citations, and one of those citations contains citations from
23 numerous appellate courts. The reported case is United States
24 versus Fred Mitchell at 358 F. Supp. 2d 707. That's a district
25 court case from Wisconsin, an opinion in February of '05 that is

26

1  addressing exactly this question. An unreported case from the
2  Sixth Circuit, Your Honor, also addresses this question and
3  lists numerous appellate courts that have talked about
4  exceptional circumstances.
5      THE COURT: What is the cite for that?
6      MS. FREEMAN: It is 2002 WL1869446. It's U.S. versus
7  Cook, a Sixth Circuit opinion. And on the first page of the
8  slip opinion, Your Honor, in a section beginning, Although the
9  mention of exceptional circumstances appears at the close of a
10 section otherwise devoted to review and appeal, we are not
11 convinced --
12     THE COURT: Slow down just a little bit.
13     MS. FREEMAN: I'm just talking about where to find
14 that.
15     THE COURT: I know. But I just don't want the court
16 reporter to self-destruct.
17     MS. FREEMAN: Okay. At a portion of that opinion on
18 the first page beginning at, Although the mention of exceptional
19 circumstances appears at the close of a section otherwise
20 devoted to review and appeal, we are not convinced that is
21 meant to be an instruction limited to the courts of appeal. It
22 goes on to say most courts considering the issue have concluded
23 that a district court is empowered to make findings regarding
24 exceptional circumstances, and it gives citations from the
25 Eighth, Tenth, Seventh, Second, and Fifth Circuits, as well as

United States of America v. Timothy Williams    2:05cr216-MEF    5/31/2006

27

1 district court in the Sixth Circuit.
2 THE COURT: I'm not sure I disagree that a district
3 court can make exceptional circumstances findings. The question
4 is whether I can under the circumstances of this provision in
5 3143.
6 MS. FREEMAN: One last case, Your Honor.
7 THE COURT: Yes.
8 MS. FREEMAN: And that is a reported Ninth Circuit
9 case, United States versus Garcia, at 340 F.3d 1013, and that's
10 discussing what types of facts would constitute exceptional
11 circumstances. One of the facts that the Court may consider,
12 according to this case, is whether or not the defendant was
13 unusually cooperative with the government. It is not suggested
14 that that's something the government has to request or make
15 known. But if the Court finds that there was unusual
16 cooperation, the Court may consider that fact alone an
17 exceptional circumstance which, if there is no danger that the
18 defendant would flee or pose a danger to the community, would
19 justify release.
20 THE COURT: All right. I'll hear whatever argument
21 that either or both of you have about exceptional circumstances,
22 and then I'm going to have to actually take a recess to decide.
23 You've already made your argument?
24 MS. FREEMAN: Well, no, I have a couple of other
25 points.

28

1 THE COURT: All right. Go ahead.
2 MS. FREEMAN: Mr. Williams is a resident of Montgomery
3 County. He owns a home here. That information was presented
4 when he was first arrested and I believe is in the pretrial
5 services report. He's paying a mortgage of approximately $900
6 per month on a home in Carriage Hills. He has two grown
7 children who live in New York, but he has lived with his
8 fiancee, who is present in the courtroom today, at that address
9 and her two young children. They've been together for
10 approximately three years. He has two jobs. Not only has he
11 been employed as an assistant manager at Trendz, which is the
12 restaurant or club that is where American Pie used to be, he
13 also is involved in promoting music concerts and rock concerts
14 in Montgomery. He also has a father and a brother living in
15 Montgomery. He provides some support to them; but also,
16 obviously, that's family connection to the community.
17 THE COURT: And what is exceptional about his
18 cooperation?
19 MS. FREEMAN: Your Honor, he cooperated with the Secret
20 Service Office, ATF, the Montgomery Police Department, and with
21 DEA. He wore a wire for, I believe, Secret Service. He has met
22 with the DEA agent on at least three occasions, including
23 today. He's provided information to all of those police
24 agencies.
25 THE COURT: Anything from the government?

29

1 MS. REDMOND: I think the Court is aware — and if it
2 is not aware of his criminal history, the government certainly
3 has that information to provide.
4 As to the defendant's argument that he is — that his
5 cooperation is unusual, the government would like the
6 opportunity to provide information to the Court; however,
7 because of the nature of the information, I would request that
8 that information provided to the Court not be — that a record
9 not be made of that information or that it be provided, if a
10 record is to be made, ex parte.
11 THE COURT: Ex parte, not just in camera?
12 MS. REDMOND: In camera would be fine, Judge.
13 THE COURT: All right. I can do that. Would you
14 rather submit it in a written form that's sealed or open only to
15 the defendant, or would you rather do it orally?
16 MS. REDMOND: Judge, taking into consideration the
17 cases presented here today by the defense and the government's
18 not having an opportunity to provide that information, I would
19 respectfully request that we be allowed not only to provide that
20 information in written form, but also to write a further
21 response to the 3145 issue and place that before the Court and
22 make a record of that.
23 THE COURT: I mean it is a significant issue. And if I
24 make a ruling on it, I am likely to have to at least write to
25 the question or in some way make a ruling on that that I

30

1 understand is a significant one for both parties.
2 What the status of the defendant would be, that he
3 would continue to be released until that's concluded. So if I
4 do continue this, which is I think what we're looking at, I
5 don't want to do it for too long. But that would be what
6 would — I would simply leave the status quo where it is and
7 tell the marshal I'm sorry that they were here today, because it
8 doesn't appear there's going to be a resolution. Let me excuse
9 them.
10 The plea is concluded. That part is done. And I'll
11 revisit this release issue. You'll remain on release until I
12 resolve it, because that's your present circumstances.
13 And let me ask how long do y'all want?
14 MS. REDMOND: Judge, if I can have until — I have two
15 other matters that are required. If I can have until Friday to
16 submit in written form our response and to provide in written
17 form our response to the defendant's representations as to
18 unusual cooperation.
19 THE COURT: All right. I'm going to give both of you
20 until Friday. In other words, I'm not going to sequence this so
21 that one responds to the other. But if the defendant wishes to
22 submit anything further in addition to these cases, you can have
23 until — do you want close of business, or can we wind this up
24 maybe at lunchtime?
25 MS. FREEMAN: Your Honor, I would really appreciate if

United States of America v. Timothy Williams    2:05cr216-MEF    5/31/2006

10 (Page 31)

```
                                                      31
 1   we had until close of business on Friday.  I'm covering pretrial
 2   conferences.
 3        THE COURT:  Well, in that case, it doesn't have to be
 4   close of business; because obviously, I'm not going to read it
 5   that late.  So we'll just make it Friday whenever.
 6        MS. REDMOND:  Yes, Your Honor.
 7        THE COURT:  And perhaps we can ruin part of your
 8   weekend.  The deadline for any further briefing or argument or
 9   submission in writing on this question will be Friday.  And
10   early next week, I'll make a decision about release or not,
11   pending sentencing.
12        MS. FREEMAN:  Thank you, Your Honor.
13        THE COURT:  Thank you very much.
14        THE CLERK:  Court is recessed.
15   (Proceedings concluded at 4:41 p.m.)
16            * * * * * * * * * *
17        COURT REPORTER'S CERTIFICATE
18        I certify that the foregoing is a correct transcript
19   from the record of proceedings in the above-entitled matter.
20        This 14th day of June, 2006.
21
22            /s/ Risa L. Entrekin
              Registered Diplomate Reporter
23            Certified Realtime Reporter
              Official Court Reporter
24
25
```

RISA L. ENTREKIN, RDR, CRR, Official Court Reporter
U.S. District Court, Middle District of Alabama  334.240.2405

United States of America v. Timothy Williams     2:05cr216-MEF

## A

abolished 9:16
above-entitled 31:19
accept 3:7,8 16:22
acceptance 3:2
accepted 7:12 11:2 14:17
acquittal 17:9 19:19 21:4
Act 8:25 16:14,23
acting 22:22
addiction 5:11
addition 22:25 30:22
additional 8:13
address 28:8
addresses 20:1 26:2
addressing 26:1
adjudged 7:12 14:18
adjudication 7:13
advice 6:4
advisory 4:1,11 9:6,9,12
affect 3:23
affirms 17:15
agencies 23:4 28:24
agent 23:2 28:22
agents 23:3
agree 3:1,13,25 4:3,19 13:11 16:1,3
agreed 9:12
agreement 2:21 2:23,25 3:18 4:6 4:7,17,20 6:7,9 6:11,13,14,17 6:24 7:2 8:19 9:12,24 10:2 16:7,9,11,12,21 19:1,3,3 20:24
agrees 3:9 4:4,10
ahead 2:8 24:16 28:1
Alabama 1:2,15 1:20,22,23 2:3 11:10,10,14

14:4,4
alcoholic 5:14
allegation 4:9
allowed 29:19
alternate 11:23
amendment 20:18
AMERICA 1:5
American 28:12
ammunitions 4:8
answer 4:25
answers 5:1
apologize 23:8
appeal 4:13 9:21 9:25 17:8 20:17 26:10,20,21
appear 19:15 20:9 30:8
APPEARANCES 1:17
appeared 23:4
appears 16:14 26:9,19
appellate 25:23 26:3
applicable 4:1 22:9
applies 17:20 19:24 20:24
apply 9:9 15:6 25:6
appointed 23:13
appreciate 30:25
appropriate 17:3 18:1,3 20:12 21:11
approximately 23:10,23 28:5 28:10
argument 19:6 22:8,15 27:20 27:23 29:4 31:8
arrested 28:4
asked 5:1 7:22 8:2 14:21 19:1
asking 19:5
assessment 7:22 8:1,16
assist 14:20
assistance 3:12 3:12 10:12
assistant 1:18

28:11
associated 11:5
assurance 6:20
ATF 28:20
attack 4:14,15 10:1
attempted 7:4
attendance 10:19
attorney 1:18,19 5:24 9:8 14:21 19:17
attorneys 6:5
AUSA 25:5
authorities 3:6
automatic 25:1
aware 13:1 14:13 22:18 29:1,2

## B

b 16:1 17:24 18:15,19,21,22 20:2,11 21:1
back 24:18 25:7
basis 12:16 13:14 14:15
beginning 20:22 26:8,18
begins 21:22
behalf 19:25 16:1
believe 3:23 4:16 13:13 15:5,14 15:21 16:18 17:22 18:6 20:15 23:23 24:24 25:2 28:4 28:21
beverage 5:14
beyond 10:9 12:3
bit 26:12
body 4:6
bond 24:11
bound 4:11 7:2 9:12 25:11,12
box 15:9
Brief 19:13
briefing 31:8
briefly 2:20
brother 28:14
business 30:23 31:1,4

## C

c 18:15 22:14
caliber 11:20,21
Call 2:5
camera 29:11,12
capable 14:12
Carriage 28:6
carried 11:15
carrying 24:22
case 1:6 5:18,21 6:4,8,21 7:5 8:7 8:9,19 9:2,9 12:3 14:10 15:3 15:6 16:17 17:5 18:4,15 20:24 22:1,20 23:9,14 25:18,23,25 26:1 27:6,9,12 31:3
cases 22:4 29:17 30:22
certainly 19:12 29:2
CERTIFICATE 31:17
Certified 31:23
certify 31:18
change 1:12 2:7 2:10
charge 3:23
charged 10:5
charges 5:17,20 11:7,9,13,25 14:6,13
checked 15:11,17 16:2
children 28:7,9
choose 7:1
chooses 6:23
Christine 1:21
Circuit 26:2,7 27:1,8
Circuits 26:25
circumstance 27:17
circumstances 9:20 25:5,9 26:4 26:9,19,24 27:3 27:4,11,21 30:12
citations 25:22 25:22,22 26:24

cite 25:19 26:5
civil 7:13
clear 15:20 17:12 21:14 22:11
clearly 18:2 19:24
CLERK 4:22 31:14
close 26:9,19 30:23 31:1,4
club 28:12
collateral 4:14
collaterally 9:25
come 18:20
commencing 1:16 2:3
commission 8:25 22:17
committed 12:9
community 17:14 17:25 21:16 22:13,21 27:18 28:16
compel 10:19
competent 14:12
complied 24:25
comply 2:17
compulsory 10:19
computer 1:25
concerts 28:13 28:13
concluded 26:22 30:3,10 31:15
conditions 8:12 17:23 18:1 20:12,25 22:19
conducted 2:11
conferences 31:2
confused 25:6
confusing 25:17
connection 28:16
consecutive 8:4 8:7
consent 2:15,19
consents 2:10
consequences 14:14
consider 27:11 27:16
consideration 29:16
considered 9:5
considering

United States of America v. Timothy Williams    2:05cr216-MEF    5/31/2006

2

26:22
constitute 27:10
contained 4:6
containing 14:16
contains 25:22
contemplated
  3:17
contend 25:8
continue 3:5,17
  30:3,4
contradiction
  20:10
Control 16:23
controlled 11:12
  12:6,7 13:23
  16:13
controversy 23:6
conviction 4:15
convinced 26:11
  26:20
convincing 17:13
  21:14 22:11
Cook 26:7
cooperate 4:5
cooperated
  28:19
cooperating 23:1
cooperation 3:17
  4:6 19:1,2,3
  27:16 28:18
  29:5 30:18
cooperative
  27:13
copy 5:16
correct 8:6 15:11
  15:13,18 16:23
  18:8 24:3 31:18
counsel 2:20 6:1
  6:3 10:12 14:23
  14:25 25:5
count 3:24 4:3,8
  7:19,23 8:16
  11:9,13,17
  16:10
counts 4:4 7:19
  11:8 14:7
County 12:21
  14:4 28:3
couple 24:15
  27:24
court 1:1,19 2:5,6
  2:9,20 4:2,13,18

4:21,24 5:4,6,8
5:10,13,16,20
5:25 6:3,7,11,16
6:19,23,23 7:4,7
7:10,18 8:8,11
8:15,18,21,24
9:4,5,8,11,15,19
9:21,23 10:4,11
10:16,22 11:1,7
12:2,10,15,19
13:15,21,22,25
14:6,10,10,20
14:22 15:7,13
15:15,22,25
16:5,12,20 18:5
18:10,13,19,22
18:23,25 19:6
19:12,14,22
20:3,6,9,16,21
21:3,6,7,8,12,17
21:22,25 22:3
22:11,18,20
23:5,7,10,17,22
24:1,4,7,9,11,15
25:3,11,12,17
25:25 26:5,12
26:15,15,23
27:1,2,3,7,11,15
27:16,20 28:1
28:17,25 29:1,6
29:8,11,13,21
29:23 30:19
31:3,7,13,14,17
31:23
courtroom 25:21
  28:8
courts 25:23 26:3
  26:21,22
covering 31:1
crime 11:17
  16:23 18:17
  22:16,22,24
  24:22
criminal 2:25
  3:19 9:2 29:2
cross-examined
  10:13
currently 5:13
custody 17:18
  23:11,20 24:1
  25:4

D

danger 17:14,24
  21:15 22:12
  27:17,18
date 12:23 15:1
day 13:8 31:20
DEA 28:21,22
deadline 31:8
death 15:11
  16:16,16
December 23:19
decide 10:22
  27:22
decision 20:17
  31:10
decisions 9:5
decline 10:16
defendant 1:8,21
  2:9,17 3:4,5,11
  3:16,25 4:4,10
  4:13,21,23 5:3,5
  5:7,9,12,15,19
  6:2,6,10,15,18
  6:22 7:3,6,9,17
  8:10,14,17,20
  8:23 9:3,7,10,14
  9:18,20 10:3,10
  10:15,21,25
  11:6 12:1,14,22
  12:25 13:3,6,10
  13:20 14:9,11
  14:13,17 16:5
  16:24 17:7
  18:24 19:22
  22:16,21 23:19
  23:24 27:12,18
  29:15 30:2,21
defendant's 29:4
  30:17
DEFENDERS 1:22
defense 10:12,14
  10:18,20 14:3
  25:5 29:17
denying 20:18
Department
  28:20
departure 3:3,13
  3:21,22 4:14
deprive 7:13
described 4:8
  11:5 18:15
detained 18:24

22:11 23:15
detention 15:4,8
  17:3,7,21 18:3
  20:1,17,22,23
determination
  3:14,20,21 21:6
determine 18:14
determined 4:2
  4:12
determining 9:1
devoted 26:10,20
different 6:19
  15:17,25 23:3
Dillon 24:24
Diplomate 31:22
Director 1:21
disagree 16:6
  17:19 22:9
  25:12,13 27:2
disagreement
  13:15,21 17:1
  18:6
discretion 3:15
discuss 6:8
discussed 5:20
discussing 27:10
dismiss 4:3
distribute 11:11
  12:7 13:5,19
district 1:1,2,22
  2:13,13 11:2,10
  11:15 14:4
  20:16 25:24
  26:23 27:1,2
DIVISION 1:3
doubt 10:9 12:4
downward 3:3,13
  3:20,22
draft 15:8
drug 5:14 11:16
  12:9 13:16
  22:18 24:23
drugs 5:11

E

early 31:10
effort 6:20
Eighth 26:25
either 27:21
elected 10:17
element 13:25
elements 12:2,8

12:13 14:16
employed 28:11
empowered
  26:23
enforcement
  23:2,3
enter 3:6
entered 2:23
  16:24
entering 9:23,24
  11:1 14:12
entirety 6:12
Entrekin 31:22
essential 14:16
establish 13:13
everybody 25:6
evidence 10:23
  17:13 21:14
  22:12
ex 29:10,11
exactly 26:1
exceptional 17:2
  18:2,4,7 20:12
  25:4,8 26:4,9,18
  26:24 27:3,10
  27:17,21 28:17
excuse 13:13
  15:14 18:21
  23:20,25 30:8
Executive 1:21
existed 23:6
explain 20:13

F

f 18:16,21 25:24
fact 14:16 27:16
  27:11
factual 12:16
  13:14
fail 3:8
false 5:2
falsely 5:1
family 28:16
far 5:8
father 28:14
February 25:25
federal 1:22 2:24
  3:19 23:4
fee 7:22 8:1,16
felony 7:11
fiancee 28:8

United States of America v. Timothy Williams    2:05cr216-MEF    5/31/2006

3

**Fifth** 26:25
**file** 3:18,20 14:23
**filed** 23:18
**find** 3:11 12:15
  17:2,8,12 18:7
  19:19 21:8
  24:13 25:8
  26:13
**finding** 14:10
  16:23 18:25
**findings** 21:13
  26:23 27:3
**finds** 21:7 22:11
  27:15
**fine** 7:20,21,24,25
  29:12
**finish** 19:8
**firearm** 7:16
  11:17 12:11
  24:23
**firearms** 4:7 13:9
  13:18 22:17
**first** 12:5,8 15:18
  15:19 16:22
  18:10,13 26:7
  26:18 28:4
**fit** 24:19
**five** 7:20,25 15:20
  16:8,11
**flee** 17:13,24
  21:15 22:12
  27:18
**follow** 6:24 9:1
**following** 2:1
**follows** 3:1 7:19
**force** 7:4
**foregoing** 31:18
**forfeit** 4:7 8:18
  8:21
**forfeiture** 4:9
  8:19
**form** 2:15,19
  15:22,23 29:14
  29:20 30:16,17
**forth** 11:17 17:23
  20:25
**found** 18:14
**four** 13:8
**fourth** 12:12
**fragment** 21:20
**Fred** 25:24
**free** 7:7

**Freeman** 1:21
  2:17,18 4:18,19
  5:21,23,25 6:5
  12:17,20,23
  13:1,4,7,11,17
  13:24 14:5 15:5
  16:6,19 17:19
  18:18 19:8,10
  19:21,24 20:5,6
  20:8 21:10,13
  21:21,23 22:1,9
  22:24 23:8,12
  25:19,20 26:6
  26:13,17 27:6,8
  27:24 28:2,19
  30:25 31:12
**Friday** 30:15,20
  31:1,5,9
**fully** 5:20 6:3
  14:12
**further** 3:9,16,18
  3:25 4:10 11:1
  13:25 19:4
  29:20 30:22
  31:8
**furtherance**
  11:16 12:11
  13:18 24:23
**F.3d** 27:9

_____ **G** _____
**Garcia** 27:9
**general** 5:21
**generally** 24:25
**give** 6:25 14:21
  23:16 30:19
**given** 3:3 6:4
  8:13 9:25 11:3
  21:8 25:5
**gives** 26:24
**go** 2:8 5:8 22:3
  24:16,18 25:7
  28:1
**goes** 26:22
**going** 17:15,22
  18:20 22:3
  27:22 30:8,19
  30:20 31:4
**governed** 19:15
  20:18
**government** 1:18
  3:5,9,11,13,18

3:20 4:5 6:12
  9:20 10:8 12:3
  13:12 14:1,2
  15:4 17:4,4,10
  17:11,15 18:6
  18:25,25 19:4
  19:17,25 20:9
  22:15 23:1,25
  25:8,10 27:13
  27:14 28:25
  29:2,5
**government's**
  2:25 29:17
**granted** 17:10
  19:20 21:5
  23:22
**grown** 28:6
**guess** 18:13
**guideline** 3:10
  4:2
**guidelines** 4:11
  4:12 9:1,5,6,9
  9:13
**guilt** 10:8
**guilty** 2:10 3:6
  4:4 6:21,25 7:5
  7:7,8,11,12 9:24
  10:5 11:2,8,25
  14:7,8,9,14,18
  16:15,24 18:14
  21:9 22:17,23

_____ **H** _____
**hand** 4:22
**Hart** 5:21,23,25
  6:5
**hear** 10:13 19:8
  20:7 27:20
**heard** 2:1
**hearing** 1:12
  14:24 15:1
  24:12
**held** 24:17
**higher** 2:12
**Hillis** 28:6
**history** 29:2
**hold** 7:14 20:3
**home** 28:3,6
**honestly** 25:14
**Honor** 2:18 4:19
  5:23 12:17
  13:13,24 14:5

15:5 16:6,19
  17:19 18:18
  19:21 20:5
  21:10,21 22:1
  22:24 23:8
  24:20 25:20
  26:2,8 27:6
  28:19 30:25
  31:6,12
**Honorable** 1:14
  2:1

_____ **I** _____
**ii** 19:16
**illness** 5:11
**impose** 7:1
**imposed** 17:12,16
  19:18
**imposes** 9:21
**imprisonment**
  7:20,21,25 8:1
  15:10,16 16:16
  16:25 17:11,16
  19:18 22:10
**including** 4:14
  23:2 28:22
**inconsistency**
  20:14
**inconsistent**
  20:13 22:22
**independent**
  14:15
**indicating** 15:9
**indictment** 3:24
  4:3,5,8,9 5:16
  11:8,19,21,22
  11:23 13:9 14:7
**individual** 20:11
**induce** 6:20
**influence** 5:13
**information**
  13:11 14:21
  28:3,23 29:3,6,7
  29:8,9,18,20
**informed** 2:9
  14:12
**innocent** 10:8
**instruction** 26:21
**intent** 11:11 12:7
  13:5,18
**intention** 3:6
**intentionally**

15:5 16:6,19
  17:19 18:18
  19:21 20:5
  21:10,21 22:1
  22:24 23:8
  24:20 25:20
  26:2,8 27:6
  28:19 30:25
  31:6,12
**Honorable** 1:14
  2:1

**11:11 12:5**
**interpret** 25:15
**interpretation**
  17:20 22:2
**involved** 28:13
**issuance** 10:18
**issue** 16:12 20:16
  26:22 29:21,23
  30:11
**issued** 9:1

_____ **J** _____
**January** 23:22,23
  24:14
**Jason** 24:6,24
**jobs** 28:10
**judge** 1:15 2:2,11
  2:12,12,13,14
  2:23 6:24 11:3
  14:2 15:14,19
  17:6 18:23
  20:16 22:7
  23:18,25 25:10
  29:12,16 30:14
**judges** 9:1
**judicial** 18:1
**June** 11:9,14
  12:20 13:8
  31:20
**jury** 7:15 10:7
**justice** 3:7
**justify** 27:19

_____ **K** _____
**kind** 5:11,14 6:20
  7:16 24:12
**know** 15:17 19:9
  23:8,9,14 24:14
  26:15
**knowing** 14:15
  23:5
**knowingly** 11:11
  11:15,16 12:5
  12:12
**known** 27:15
**knows** 22:20
**Konrad** 25:21

_____ **L** _____
**L** 31:22
**laid** 13:14
**late** 31:5

United States of America v. Timothy Williams    2:05cr216-MEF    5/31/2006

4

**law** 7:18 22:1 23:2,3 25:18
**lawyers** 6:9
**leave** 30:6
**legal** 24:18
**Let's** 4:21
**levels** 3:2,14
**life** 15:10,21 16:4 16:4,16,25
**likelihood** 17:9 19:19 21:4,7,8 21:23
**limited** 26:21
**limits** 8:8
**lists** 26:3
**little** 26:12
**live** 28:7
**lived** 28:7
**living** 28:14
**long** 23:7 30:5,13
**look** 17:10 18:10 21:1 22:3
**looking** 17:6 21:3 21:10 30:4
**low** 4:1 16:7,7
**lunchtime** 30:24

_____ **M** _____
**magistrate** 1:15 2:2,11,12
**making** 5:2
**manager** 28:11
**mandate** 22:20 25:16
**mandated** 17:18
**manner** 22:22
**marijuana** 11:12 12:6,24 13:2,4 13:19
**marked** 16:20
**marshal** 23:21 25:4 30:7
**marshals** 17:18
**matter** 31:19
**matters** 30:15
**maximum** 7:18 7:24 15:10,16 16:10,13,16,25
**maze** 24:18
**ma'am** 5:12,15 6:18,22 7:3,6,9 7:17 8:10,14,17

8:20,23 9:3,7,10 9:14,18 10:10 10:15,21,25 11:6 12:1,14 18:12,20 24:13
**mean** 29:23
**means** 25:13
**meant** 26:21
**medication** 5:14
**meeting** 19:2 23:2
**meets** 17:23 20:2 20:25
**mental** 5:11
**mention** 26:9,18 31:4
**met** 19:3 23:3 28:21
**Middle** 1:2,22 11:10,14 14:4
**minute** 19:7 20:3 23:16
**Mitchell** 25:24
**Model** 11:18,22
**moment** 25:7
**Monroe** 1:23
**Montgomery** 1:15,20,23 2:3 11:10,14 12:21 14:3 28:2,14,15 28:20
**month** 28:6
**mortgage** 28:5
**motion** 3:22 17:9 18:24 19:19,25 21:4 23:19,23
**motioned** 3:4
**music** 28:13

_____ **N** _____
**name** 5:4
**named** 13:9
**narcotic** 5:11
**nature** 14:13 29:7
**need** 2:15 12:15 15:7,17 19:4
**needs** 16:20 21:6
**new** 17:9 19:20 21:4 28:7
**nine-millimeter** 11:18
**Ninth** 27:8
**Norinco** 11:22

**NORTHERN** 1:3
**note** 8:4
**notify** 3:5
**number** 11:19,20 11:22
**numbers** 11:23
**numerous** 25:23 26:3

_____ **O** _____
**oath** 4:25
**objections** 14:24
**obstruct** 3:7
**obviously** 28:16 31:4
**occasions** 28:22
**occur** 24:7,9
**occurs** 24:14
**offense** 7:23 8:3 10:5 12:4,8,9,9 12:11 13:21 14:16 15:10 16:15,24 18:14 22:18 24:23
**offenses** 7:10,11 7:12 12:2 14:18
**office** 1:19 7:15 14:20 15:24 28:20
**officer** 15:23,24 16:3 18:2 23:11 24:2,20
**officers** 23:21
**Official** 31:23
**Oh** 8:20
**Okay** 2:20 5:25 15:22,25 18:13 18:16,22 19:6 21:12,17 24:4 24:11 26:17
**old** 5:6
**ones** 15:25
**open** 29:14
**opinion** 25:25 26:7,8,17
**opportunity** 6:8 6:25 14:25 29:6 29:18
**option** 16:17 25:9
**orally** 29:15
**order** 2:5 15:2 17:18 20:17,18

**ordered** 18:1 20:11 21:1 23:24
**orders** 15:8
**owns** 28:3

_____ **P** _____
**page** 26:7,18
**paragraph** 21:20
**Pardon** 24:8
**parole** 9:15,17
**part** 10:1,16 19:1 30:10 31:7
**parte** 29:10,11
**parties** 2:24 30:1
**pause** 19:13
**pay** 8:15
**paying** 28:5
**penalty** 7:18
**pending** 5:17 15:8 17:7 31:11
**perjury** 5:2
**permit** 14:22
**persist** 10:6
**person** 17:12,13 17:14,21,22,25 17:25 19:18 20:1,22 21:14 21:15 22:10,12 22:13
**Pie** 28:12
**pistol** 11:18
**place** 13:8 29:21
**plea** 1:12 2:7,10 2:10,14,14,21 2:23 3:6 4:7 6:7 6:8,11,14,16,24 6:25 7:1,2,12 9:11,24,24 10:2 10:6 11:2,2 12:16 14:12,14 14:14,15,17 16:7,9,11,15,21 16:24 21:9 30:10
**plead** 4:4 6:21 7:5 10:5 14:6
**pleading** 7:7,11 11:7,25
**please** 2:21 5:4
**pled** 22:16,23
**point** 3:4 15:17

18:9 23:14
**points** 27:25
**police** 28:20,23
**portion** 26:17
**pose** 17:14,24 21:15 22:12 27:18
**position** 25:10
**possess** 7:15 11:16 12:23 13:4,8,17,18
**possessed** 11:11 12:5,7,11 13:2
**possession** 13:23 22:17
**postconviction** 4:15
**prefer** 2:22
**prepared** 14:19 15:23,23,24
**prescribed** 16:13
**present** 14:22 18:4 25:21 28:8 30:12
**presented** 28:3 29:17
**presentence** 14:19,23
**presumed** 10:7
**presumption** 15:3,6 17:2
**pretrial** 15:24 16:1 23:13 24:6 28:4 31:1
**prevent** 22:21
**previously** 2:9 18:24
**primary** 5:23
**prison** 8:13 9:16
**probation** 8:1 14:20 15:23,24 16:3 22:19 24:5 24:16,20
**procedure** 2:25 3:19
**proceed** 12:16
**proceeding** 4:16
**proceedings** 1:24 2:1,11 31:15,19
**process** 10:19
**produced** 1:25
**promise** 6:20

| | | | | |
|---|---|---|---|---|
| promoting 28:13 | 20:16 22:8 | 31:10 | 7:15 8:8 9:20,25 | 20:21 21:11,19 |
| prosecuted 12:10 | really 30:25 | released 9:17 | 10:4,6,12,12,16 | sentenced 9:16 |
| 13:22 | Realtime 31:23 | 18:1 19:1,22 | 10:18 11:4 | sentencing 3:10 |
| prosecution 5:2 | reasonable 10:9 | 20:11 21:1 | 13:15 15:7,11 | 3:14,16 4:2,10 |
| protect 22:21 | 12:3 | 22:13 23:7,10 | 15:15 18:5,10 | 4:12,13,13 8:24 |
| prove 10:8 12:3 | reasons 17:3 | 23:24 30:3 | 19:14 20:3 22:5 | 8:25 9:9,12 |
| provide 3:17 | 18:3,4,7 20:12 | remain 19:5,5 | 24:15 25:3,17 | 14:20,24 15:1,1 |
| 19:16 29:3,6,18 | 25:8 | 24:1 30:11 | 27:20 28:1 | 15:8 31:11 |
| 29:19 30:16 | recall 18:24 | remand 25:1 | 29:13 30:19 | September 23:14 |
| provided 2:16 | receive 4:1 16:8 | remanded 25:4 | rights 7:14 11:4 | sequence 30:20 |
| 3:11 7:18 10:1 | received 5:16 | report 14:19,21 | Risa 31:22 | serial 11:19,20,21 |
| 13:12 21:20 | recess 27:22 | 14:23 24:24 | Robin 25:20 | 11:23 |
| 28:23 29:8,9 | recessed 31:14 | 28:5 | rock 28:13 | serve 7:15 |
| provides 28:15 | recommend 3:2 | reported 1:24 | Rossi 11:19 | Service 23:21,22 |
| provision 27:4 | 3:13,25 17:11 | 25:23 27:8 | Ruger 11:18,21 | 24:2 28:20,21 |
| provisions 3:1 | 17:16 19:17 | reporter 26:16 | ruin 31:7 | services 24:6 |
| 17:6 20:19 | 22:10 | 31:22,23,23 | rule 2:24 3:19 | 28:5 |
| public 7:14 | recommendati... | REPORTER'S | rules 2:24 3:19 | serving 19:2 |
| punishment 7:24 | 24:17,21 25:3 | 31:17 | ruling 29:24,25 | set 4:5,8 11:8,17 |
| 8:9 16:10 | recommendati... | represent 6:11 | run 8:6 | 11:19,20,22,23 |
| purposes 19:2 | 4:11,12 | representation | Russ 1:14 2:2 | 15:1 17:23 |
| pursuant 2:24 | record 29:8,10,22 | 6:4 | | 20:25 |
| 3:2,9,18 8:19 | 31:19 | representations | **S** | Seventh 26:25 |
| 16:23 17:17,21 | Redmond 1:18 | 30:17 | s 31:22 | severe 7:2 |
| 20:23 | 2:22 8:6 14:2 | request 23:24 | safety 17:25 | shorter 16:22 |
| put 10:23 | 15:12,14,19 | 24:10 27:14 | 21:15 22:13 | shown 18:2 |
| puts 25:14 | 16:18 17:6 18:8 | 29:7,19 | salient 4:16 | sign 2:15 |
| p.m 1:16 2:4 | 18:12,20,23 | require 19:25 | satisfied 6:3 | signed 2:18 6:9 |
| 31:15 | 19:10 20:15,23 | required 30:15 | saying 21:19,25 | significant 29:23 |
| P89 11:18 | 21:6 22:6,7 | requires 16:7 | says 8:4 21:20 | 30:1 |
| | 23:16,18 24:3,5 | resident 28:2 | Schedule 11:12 | simply 21:13 30:6 |
| **Q** | 24:8,10,13 | resolution 30:8 | school 5:8 | Sixth 26:2,7 27:1 |
| quantity 12:24 | 25:10 29:1,12 | resolve 29:14 | sealed 29:14 | skip 20:21 |
| 13:2 | 29:16 30:14 | respectfully | second 12:6,9 | SKS 11:22 |
| question 13:17 | 31:6 | 29:19 | 15:15 21:17 | slip 26:8 |
| 14:2 19:7 25:14 | reduction 3:18 | respond 19:23 | 26:25 | Slow 26:12 |
| 26:1,2 27:3 | refers 20:10 | responds 30:21 | Secret 23:21 24:2 | somewhat 20:13 |
| 29:25 31:9 | 21:13 | response 29:21 | 28:19,21 | sorry 20:4 24:9 |
| questions 4:25 | reflected 4:20 | 30:16,17 | section 3:10,23 | 25:12 30:7 |
| 12:17 14:1 | Reform 8:25 | responsibility | 11:13,24 12:4 | sort 24:18 |
| quick 22:8 | regard 8:11 12:4 | 3:3,7,8 | 19:16 20:19,19 | speak 14:25 |
| quite 25:14 | 24:17 | restaurant 28:12 | 20:25 21:23 | 19:10 22:19 |
| quo 30:6 | regarding 26:23 | restitution 7:23 | 22:14 26:8,10 | special 8:16 |
| | Registered 31:22 | 8:2 | 26:19 | specifically 11:18 |
| **R** | relate 17:24 | review 26:10,20 | see 10:13 21:25 | 20:1 |
| R 1:18 | relation 11:16 | reviewed 19:14 | self-destruct | specifies 16:22 |
| raise 4:22 | 25:15 | revisit 30:11 | 26:16 | Square 1:19 |
| range 4:2 | release 7:22 8:11 | revocation 20:18 | sentence 4:1,15 | stand 2:8 |
| ranking 2:12 | 8:13 15:8 17:7 | revolver 11:20 | 7:2 8:5,7 9:2,21 | standing 5:24 |
| read 2:15 6:8 | 17:23 20:17,25 | rifle 11:21 | 10:1 15:10 16:7 | start 17:4 |
| 14:23 20:6 31:4 | 22:25 23:13,19 | right 2:13 4:15,21 | 16:16,25 17:8 | state 5:4 20:5 |
| reading 19:8 | 27:19 30:11,11 | 4:22 7:14,14,15 | 17:11,16 19:18 | 23:4 |

United States of America v. Timothy Williams     2:05cr216-MEF

5/31/2006
6

| | | | | |
|---|---|---|---|---|
| **stated** 16:11 | 25:17 27:2 | **transcript** 1:25 | 11:24 16:9 | 30:16 |
| **statement** 5:2 | **surely** 16:20 | 31:18 | **violations** 23:1 | |
| **States** 1:1,5,14 | **Susan** 1:14,18 2:2 | **treated** 5:10 | **violence** 18:17 | **Y** |
| 1:18,19 2:2,6,11 | **swear** 4:21 | **Trendz** 28:11 | 22:16,25 24:22 | **years** 7:20,21,25 |
| 2:12 3:10,15 4:7 | **sworn** 4:23 | **trial** 10:7,7 11:3,4 | **voluntarily** 10:17 | 15:16,20 16:8 |
| 8:25 12:10 | | 11:5 17:9 19:20 | **voluntary** 14:15 | 16:11 28:10 |
| 13:22 14:11 | **T** | 21:4 | **vote** 7:14 | **yesterday** 15:9 |
| 23:20,21,21 | **take** 2:14,14 | **trying** 24:13 | **vs** 1:6 | 23:5 |
| 25:23 27:9 | 27:22 | **turn** 18:16 | | **York** 28:7 |
| **status** 30:2,6 | **taken** 20:15 | **Twelfth** 5:9 | **W** | **young** 28:9 |
| **statute** 19:14 | **takes** 25:11 | **two** 3:2,24 4:5,8 | **waived** 9:25 11:3 | **y'all** 30:13 |
| **statutes** 22:2 | **talked** 9:8 26:3 | 7:19,21,24 11:8 | **waives** 4:13,14 | |
| 24:19 25:6 | **talking** 18:11 | 11:13,25 14:7 | **Walker** 1:14 2:2 | **$** |
| **stenographically** | 20:4 26:13 | 15:8,25 25:21 | **want** 22:5 26:15 | **$100** 7:22 8:1,16 |
| 1:24 | **tell** 22:6 30:7 | 28:6,9,10 30:14 | 30:5,13,23 | **$250,000** 7:20,24 |
| **stipulate** 13:12 | **tells** 15:15 | **types** 27:10 | **wanted** 22:7 | **$900** 28:5 |
| 14:3,5 | **ten** 15:16 | | **way** 7:4 25:2 | |
| **Stop** 21:17 | **Tenth** 26:25 | **U** | 29:25 | **0** |
| **Street** 1:23 | **term** 15:16,21 | **unaware** 22:19 | **weapons** 8:21 | **05** 25:25 |
| **Strum** 11:21 | 16:13,22 22:10 | **understand** 4:24 | **Wednesday** 1:15 | |
| **subject** 17:21 | **terms** 2:21 3:3 | 6:16,23 7:10 8:8 | 2:3 | **1** |
| 20:1,22 | 4:16,20 6:16,24 | 8:12,15,18,22 | **week** 31:10 | **1** 17:24 18:16,21 |
| **submission** 31:9 | 8:19 19:2,3 | 8:24 9:4,11,15 | **weekend** 31:8 | 18:21 21:1,3 |
| **submit** 29:14 | **testify** 10:17,20 | 9:19,23 10:4,11 | **went** 24:5 25:2 | **1013** 27:9 |
| 30:16,22 | 10:23 | 10:22 11:1,24 | **we'll** 24:18 31:5 | **11th** 23:22,23 |
| **subparagraph** | **Thank** 12:19 | 12:13 16:21 | **we're** 17:22 30:4 | **11(c)(1)(A)** 2:24 |
| 18:15 | 19:24 31:12,13 | 18:5 30:1 | **willfully** 12:12 | **1291** 20:19 |
| **subpoenas** 10:18 | **thanks** 25:20 | **understanding** | **Williams** 1:7 2:7 | **13th** 11:9,14 |
| **subsection** 18:16 | **thing** 18:13 | 6:12 24:22 | 2:8,18 4:24 5:5 | 12:20 13:8 |
| 19:16 | **things** 24:15 | **United** 1:1,5,14 | 12:18,20 14:11 | **14th** 31:20 |
| **substance** 11:12 | **think** 15:19,22 | 1:18,19 2:2,6,11 | 17:17 22:25 | **18** 3:10,23 11:24 |
| 12:6,7 13:23 | 16:12 17:17 | 2:12 3:9,15 4:7 | 28:2 | 17:7 |
| **Substances** | 18:8 20:21,24 | 8:25 12:10 | **wind** 30:23 | **19th** 23:14 |
| 16:14 | 22:7,8,15 29:1 | 13:22 14:11 | **wire** 28:21 | **1984** 8:25 |
| **substantial** 3:12 | 30:4 | 23:20,20,21 | **Wisconsin** 25:25 | **1990** 16:24 |
| 3:12 17:8 19:19 | **third** 3:4 12:10 | 25:23 27:9 | **wish** 2:14 14:22 | |
| 21:4,23 | **three** 3:14 4:3 | **unreported** 26:1 | **wishes** 2:10 | **2** |
| **suggested** 27:13 | 23:3 28:10,22 | **unusual** 27:15 | 30:21 | **2** 19:16 20:2,11 |
| **suggests** 20:11 | **time** 3:21 8:13 | 29:5 30:18 | **withdraw** 6:25 | 21:20 |
| **Suite** 1:19,23 | 13:7 | **unusually** 27:13 | 7:1 | **2d** 25:24 |
| **summarize** 2:20 | **timely** 3:5 | **upward** 4:14 | **withdrawn** 16:10 | **2:05cr216** 2:7 |
| **supervised** 7:22 | **Timothy** 1:7 2:6 | **U.S** 26:6 | **witnesses** 10:13 | **2:05cr216-MEF** |
| 8:11,12 24:21 | 5:5 14:11 | **U.S.C** 11:13,24 | 10:19 | 1:6 |
| 24:25 | **title** 3:10,23 17:7 | 12:4 | **WL1869446** 26:6 | **2002** 26:6 |
| **supervision** | 20:19,20 | | **worded** 25:2 | **2005** 11:9,14 |
| 23:13 24:5 25:1 | **today** 2:15 5:24 | **V** | **words** 6:13 30:20 | 12:20 13:8 |
| **Supp** 25:24 | 11:25 23:2,5 | **valuable** 7:13 | **wore** 28:21 | 23:14,19 |
| **support** 28:15 | 28:8,23 29:17 | **versus** 2:6 14:11 | **write** 29:20,24 | **2006** 1:16 2:3 |
| **supported** 14:15 | 30:7 | 25:24 26:6 27:9 | **writing** 31:9 | 23:22 31:20 |
| **supporting** 22:2 | **trafficking** 11:17 | **victim** 7:23 8:2 | **written** 5:17 6:7 | **201** 1:19,23 |
| **Supreme** 9:5 | 12:9 13:16 | **violate** 8:12 | 6:13,14 14:19 | **21** 11:12 12:4 |
| **sure** 18:5 25:15 | 22:18 24:23 | **violation** 11:12 | 29:14,20 30:16 | **223** 11:21 |

RISA L. ENTREKIN, RDR, CRR, Official Court Reporter
U.S. District Court, Middle District of Alabama  334.240.2405

United States of America v. Timothy Williams      2:05cr216-MEF                    5/31/2006

7

| | | | | |
|---|---|---|---|---|
| **28** 20:19 | **924(c)(1)** 16:9 | | | |
| | **924(c)(1)(A)** | | | |
| **3** | 11:24 | | | |
| **3:58** 1:16 2:4 | | | | |
| **31** 1:15 2:3 | | | | |
| **3142** 18:16 25:11 | | | | |
| **3142(b)** 22:14 | | | | |
| **3143** 17:6,17 | | | | |
| 18:9 21:2 25:12 | | | | |
| 25:13,15 27:5 | | | | |
| **3143(a)** 19:15 | | | | |
| **3143(a)(1)** 17:23 | | | | |
| 21:1,11,13,19 | | | | |
| 22:8 | | | | |
| **3143(a)(2)** 17:21 | | | | |
| 18:11 20:2,10 | | | | |
| 20:13,23 21:24 | | | | |
| **3143(a)(2)(A)...** | | | | |
| 21:11 | | | | |
| **3145** 29:21 | | | | |
| **3145(c)** 17:20,20 | | | | |
| 19:24 20:4,16 | | | | |
| 25:13 | | | | |
| **340** 27:9 | | | | |
| **35** 3:19 | | | | |
| **3553(e)** 3:10 | | | | |
| **358** 25:24 | | | | |
| **36104** 1:20,23 | | | | |
| **3731** 20:19 | | | | |
| **38** 11:19 | | | | |
| **39** 5:7 | | | | |
| | | | | |
| **4** | | | | |
| **4:41** 31:15 | | | | |
| **407** 1:23 | | | | |
| | | | | |
| **5** | | | | |
| **5K1.1** 3:10 | | | | |
| **5th** 23:19 | | | | |
| | | | | |
| **7** | | | | |
| **707** 25:24 | | | | |
| | | | | |
| **8** | | | | |
| **841(a)** 12:4 | | | | |
| **841(a)(1)** 11:13 | | | | |
| | | | | |
| **9** | | | | |
| **924** 8:6 | | | | |
| **924(c)** 3:23 12:8 | | | | |
| 15:20 16:8 | | | | |
| 22:16,24 | | | | |

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 06-15791
Non-Argument Calendar

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 17, 2007
THOMAS K. KAHN
CLERK

D. C. Docket Nos.
04-01403-CV-T-27-MSS
02-00442-CR-T-2

VICTOR OTERO,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

Appeal from the United States District Court
for the Middle District of Florida

(September 17, 2007)

Before TJOFLAT, ANDERSON and HULL, Circuit Judges.

PER CURIAM:



In 2003, Victor Otero pleaded guilty to one count of possessing with the
intent to distribute five or more kilograms of a mixture or substance containing a
detectable amount of cocaine while on board a speed boat subject to the
jurisdiction of the United States, in violation of 46 App. U.S.C. §§ 1903(a) and
1903(g) and 21 U.S.C. § 960(b)(1)(B)(ii).  Otero, who was represented by a lawyer
in the district court proceedings, was sentenced to 135 months in federal prison.
Otero did not appeal his conviction or sentence.

In 2004, Otero, without representation, filed a motion pursuant to 28 U.S.C.
§ 2255 to vacate, set aside, or correct his sentence.  Among other things, Otero
alleged that his trial lawyer rendered constitutionally ineffective assistance when
he failed to file a notice of appeal of Otero's 135-month sentence even though
Otero specifically "insisted" that he do so.  The district court scheduled an
evidentiary hearing on Otero's ineffective assistance claim and appointed a new
lawyer to represent him.  Following the evidentiary hearing, the district court
rejected Otero's ineffective assistance claim, expressly finding Otero's "testimony
that he directed his attorney to appeal is not credible."  The district court
considered and rejected Otero's other claims on the briefs and they are not before
us in this appeal.  The district court denied Otero's subsequent request for a
certificate of appealability.

2

We granted a certificate of appealability on two issues:

(1)    Whether counsel's communications with Otero regarding his right to appeal were sufficient to fulfill his duty to consult. See United States v. Thompson, 481 F.3d 1297 (11th Cir. 1997).

(2)    Whether, if counsel did not fulfill his duty to consult, Otero has shown a reasonable probability that he would have appealed. See id.

After a thorough review of the briefs, the record, and the relevant legal authority, we conclude that Otero's trial lawyer had no constitutional duty to consult Otero about an appeal and thus did not render constitutionally ineffective assistance by failing to do so.[1] Accordingly, we affirm the district court's judgment denying Otero's § 2255 motion.

## I. DISCUSSION

"In a Section 2255 proceeding, we review legal issues de novo and factual findings under a clear error standard." United States v. Walker, 198 F.3d 811, 813 (11th Cir. 1999).

---

[1]    We will assume for the sake of argument that Otero's lawyer failed to consult with Otero about his appeal options — that is, failed to "advis[e] [Otero] about the advantages and disadvantages of taking an appeal" and failed to "mak[e] a reasonable effort to discover [Otero's] wishes." Roe v. Flores-Ortega, 528 U.S. 470, 478, 120 S. Ct. 1029, 1035 (2000). This means the answer to the first COA issue is no. However, for the reasons discussed in the text, the failure of Otero's lawyer in this regard does not itself constitute deficient performance because there was, under the circumstances of this case, no constitutional duty to consult in the first place. We therefore need not address the second COA issue.

3

At the outset, we must reject Otero's assertion that he directed his lawyer to file a notice of appeal on his behalf. The district court heard live testimony on this issue from Otero, Otero's trial lawyer, and the Spanish-English interpreter who participated in Otero's sentencing hearing. The district court expressly credited the testimony of Otero's lawyer,[2] who said that Otero never instructed him to file a notice of appeal, and expressly discredited Otero's contrary testimony that he did in fact give such instructions. We must respect the district court's credibility determination on this issue; the district court's factual finding is not clearly erroneous. See Thompson v. United States, 481 F.3d 1297, 1300 (11th Cir. 2007). We thus conclude that Otero did not direct his lawyer to file a notice of appeal.

We have been told by the Supreme Court that in cases like this — "cases where the defendant [does not] instruct[] counsel to file an appeal" — "the question whether counsel performed deficiently by not filing a notice of appeal is best answered by . . . asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal." Flores-Ortega, 528 U.S. at 478, 120 S. Ct. at 1035. As we noted above, we will assume for the sake of argument that Otero's lawyer did not "consult" — as that term is used in Flores-

---

[2] The testimony of Otero's lawyer was corroborated by the testimony of the interpreter.

4

<u>Ortega</u> — with Otero about an appeal.[3] Given this assumption, the dispositive question in this appeal is "whether counsel's failure to consult with the defendant itself constitutes deficient performance." <u>Id.</u>

A criminal defense lawyer is not under a per se constitutional obligation to consult with his or her client about an appeal. In some cases, the Sixth Amendment requires such consultation; in others, it does not. "We cannot say, as a <u>constitutional</u> matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient." <u>Flores-Ortega</u>, 528 U.S. at 479, 120 S. Ct. at 1036. The Supreme Court has rejected a bright-line rule in this context because such a rule would be "inconsistent with <u>Strickland</u>'s[4] holding that 'the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'"

---

[3]    The testimony of Otero's lawyer, which was credited by the district court, was that he did consult with and advise Otero on three occasions concerning the appeal waiver. He advised Otero that with the guilty plea he would likely receive a sentence within the guideline range of 135 to 168 months (that is, receiving acceptance of responsibility and safety valve reductions), and that if he received such a sentence, there would be no promising basis to appeal. He fully advised Otero about the appeal waiver, although counsel also told Otero that even though he had signed the appeal waiver, counsel would nevertheless file a notice of appeal if requested (although it would probably be futile). Finally, counsel told Otero he intended to seek a minor role reduction (which would further reduce the likely sentence), but that this was only a possibility. However, counsel acknowledged that, after the sentence was imposed, he did not consult with Otero about appealing. Accordingly, we assume <u>arguendo</u> (but expressly do not decide) that counsel did not consult with Otero as that term is contemplated in <u>Flores- Ortega</u> and <u>Thompson</u>.

[4]    <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984).

5

Id. at 478, 120 S. Ct. at 1035.

Rather than countenancing an inflexible rule, the Court in Flores-Ortega held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480, 120 S. Ct. at 1036. This inquiry is informed by several "highly relevant" factors, including: whether the conviction follows a guilty plea, whether the defendant received the sentence he bargained for, and "whether the plea [agreement] expressly . . . waived some or all appeal rights." Id.

Here, Otero's conviction was the result of a guilty plea, which tends to indicate that he was interested in "seek[ing] an end to judicial proceedings." Id. And although his sentence of 135 months was lengthier than his lawyer told him he might possibly receive if the court were to grant him a minor-role reduction under the Sentencing Guidelines, his lawyer advised Otero that he would probably receive a sentence within the range of 135 to 168 months and that there would be no promising appeal of such a sentence. After receiving and understanding this advice, Otero explicitly agreed as part of his guilty plea to waive the right to

challenge on appeal any application of the Guidelines (with exceptions which are not relevant). Otero actually received a sentence of 135 months, the low end of the guideline range predicted by his lawyer.

In answering the question of whether a rational defendant would want to appeal his sentence, it is relevant to ask whether there are any potential non-frivolous grounds for appeal, whether there was a guilty plea, and whether the plea expressly waived the right to appeal. See Flores-Ortega, id. at 480, 120 S.Ct. at 1036. All those factors weigh heavily in favor of the government in this case. The plea agreement signed by Otero contained a typical appeal-waiver provision, pursuant to which Otero "expressly waive[d] the right to appeal [his] sentence, directly or collaterally, on any ground." This broad waiver contained four exceptions. Those exceptions allowed Otero to appeal (1) "an upward departure by the sentencing judge," (2) "a sentence above the statutory maximum," (3) "a sentence in violation of the law apart from sentencing guidelines," or (4) any sentence if the Government appealed.[5] Otero does not argue that any of these exceptions apply in this case. Therefore, on account of the plea agreement's broad appeal waiver, any appeal taken by Otero would have been frivolous and would

---

[5]        The district court rejected Otero's allegation (also contained in his motion for relief under § 2255) that his sentence should be set aside because he did not fully understand the terms of his plea agreement. Otero does not challenge that ruling on appeal.

7

have been an appeal that no rational defendant would have taken.

The only evidence relied upon by Otero to establish that he showed any interest in appealing is his own testimony at the evidentiary hearing in which he said that (1) he instructed his lawyer (through the interpreter, at the conclusion of the sentencing hearing) to file a notice of appeal and that (2) he tried to contact his lawyer via letter and telephone to communicate this request. As we noted above, however, the district court discredited Otero's testimony on both of these points, and we are bound to respect the court's factual finding. We therefore conclude that there is no evidence indicating that Otero reasonably demonstrated to his lawyer any interest in appealing his sentence. To the contrary, Otero's lawyer testified that Otero never indicated a desire to appeal. The district court, crediting counsel's testimony, so found. Indeed, the district court found: "Prior to sentencing, Petitioner agreed with Ostrander [his counsel] that no viable appeal would be available if a sentence within the guideline range was imposed."

Because no rational defendant in Otero's position would have sought to appeal in light of the broad appeal waiver, and because Otero did not communicate to his lawyer a desire to appeal, we conclude that Otero's lawyer was not under a constitutional obligation to consult Otero about an appeal.

8

## II. CONCLUSION

For these reasons, we conclude that the performance of Otero's trial lawyer was not constitutionally deficient. Accordingly, the district court's judgment denying Otero's § 2255 motion is

AFFIRMED.